# JOSLIN MANUFACTURING COMPANY v. CITY OF PROVIDENCE ET AL.

# SCITUATE LIGHT & POWER COMPANY v. CITY OF PROVIDENCE ET AL.

# JOSLIN v. CITY OF PROVIDENCE ET AL.

ERROR TO THE SUPERIOR COURT OF THE STATE OF RHODE ISLAND.

Nos. 219, 220, 221. Argued April 19, 20, .1923.—Decided June 11, 1923.

1. A State, in authorizing the appropriation of waters under its primary control by a city, may require the city to furnish necessary water to other municipalities within the drainage area at fair wholesale rates, without requiring them to bear a proportionate part of the cost of acquiring the water supply and of constructing and maintaining the works. P. 673.

2. Section 18, c. 1278, Pub. Laws of Rhode Island, 1915, authorizing the City of Providence to furnish water to incorporated water companies, for use within the drainage areas where there is no public water supply, merely gives the city an opportunity to dispose of water, which for the time it may not need, for compensation, as an incident to the main purposes of the legislation. P. 674.

3. This provision is separable from other provisions of the act involved in this case, and its constitutionality should not be decided in the absence of any attempt to carry it out. P. 675.

4. Injury to a business carried on upon lands taken for public use does not constitute an element of just compensation, in the absence of a statute allowing it. P. 675.

5. A statute providing for the taking of land for public use does not deny the equal protection of the laws by granting the owner of any business on the land established prior to the passage of the act the right to recover for injury thereto, while withholding such compensation from those whose businesses have been established since. P. 675.

6. A statute for the taking of lands for public use does not deny the equal protection of the laws by extending to mill owners the privilege of recovering the cost of moving their machinery to a new loca-

tion within defined geographical limits and not extending it to those desirous of moving to locations not within those limits.  P. 676.

7. A statute providing for the taking of lands for public use by a city does not deprive the city taxpayers of property without due process of law by making the city liable to property owners for consequential damages, within the limits of equity and justice, in addition to the just compensation required by the Constitution.  P. 676.

8. The taking of property for public use by a State or one of its municipalities need not be accompanied or preceded by payment; the requirement of just compensation is satisfied when the public faith and credit are pledged to a reasonably prompt ascertainment and payment, and there is adequate provision for enforcing the pledge.  P. 677.

9. This requirement being met, a city, after passing of title and before offer or payment of compensation, may be authorized to make dispositions by lease or otherwise, and to remove buildings and improvements, in ways incidental to the administration of the statute under which the property was taken.  P. 678.

10. The legislature, without allowing the property owner opportunity for hearing and decision by an impartial tribunal, may constitutionally empower a city to decide *ex parte* what property, within a definitely restricted area, is necessary to be taken for the city's authorized public use.  P. 678.

44 R. I. 31, affirmed.

Error to decrees of the Superior Court of Rhode Island dismissing bills brought to enjoin the City of Providence and the members of the Water Supply Board from taking possession of, or interfering with, property of the plaintiffs, under an act of the legislature authorizing the city to obtain a water supply.  The decrees were entered after constitutional questions raised had been certified to the State Supreme Court and its decision certified, with return of the record, to the court below.

*Mr. Robert H. McCarter,* with whom *Mr. Francis I. McCanna, Mr. Alfred G. Chaffee* and *Mr. James Harris* were on the briefs, for plaintiffs in error.

*Mr. Albert A. Baker,* with whom *Mr. Elmer S. Chace* was on the brief, for defendants in error.

Mr. Justice Sutherland delivered the opinion of the Court.

These are suits in equity brought by the several plaintiffs in error in the Superior Court of Rhode Island, to enjoin the defendants in error from taking possession of or interfering with their property. The proceedings complained of, were taken under an act of the state legislature, purporting to authorize the City of Providence to obtain a supply of pure water. Public Laws, c. 1278, approved April 21, 1915. The Water Supply Board, whose members are made parties defendant, is directed by the act to investigate and determine whether a part of the north branch of the Pawtuxet River and the tributary watershed would be the most available and desirable source of water supply for the City of Providence and for any territories now supplied, or hereafter supplied under the provisions of the act, by means of the waterworks of said city. The board, if it approve the source, is to make a plan, locating storage reservoirs and an aqueduct to carry water therefrom to the city waterworks.    § 3.

Thereupon the board is authorized to purchase for and in the name of the city such lands and interests and water rights as may be necessary, when the city council shall have made provision for the necessary funds.   § 4.

The city is authorized to acquire by condemnation any lands and interests included within a definitely limited area, which the city council shall deem necessary for the purposes stated in the act.   § 5.

The city is further authorized by condemnation to acquire the waters or any part thereof, included within the area, and any water or flowage rights or privileges appurtenant thereto.   § 6.

The owner of any mill upon land taken, may surrender the machinery therein to the city within six months after the taking, whereupon the city shall become liable to pay its fair value at the time of delivery as part of the dam-

ages for such taking; or such special damages as may be suffered as a result of a compulsory removal before the expiration of a reasonable time. If the machinery be not surrendered, the reasonable cost of removing it to a new location within the New England States and setting it up is to be paid by the city as part of the damages. § 12.

The city is also required to pay the fair market value of furniture and building equipment, contained in any building belonging to the town of Scituate, which may be surrendered (§ 11); the cost of additional police protection in any town or city in consequence of carrying on construction work (§ 14); damages for decrease in value of lands not taken but contiguous to lands which are taken (§ 15), and limited damages in certain cases for loss of employment due to the taking of the manufacturing establishment in which claimant is employed (§ 17).

The owner of any business, on lands within certain localities, established prior to the passage of the act, is given the right to recover for injury thereto. § 16.

Certain municipalities and districts within the drainage areas described, when necessary are allowed to take and receive water from the city waterworks for domestic and municipal purposes upon payment therefor at fair wholesale rates or charges, which, in case of disagreement, are to be determined by arbitration. The city is also authorized, under specified limitations, to furnish water to any incorporated water company, for use in any territory included within the drainage areas where there is no public water supply. § 18.

In case any lands purchased or condemned are not required for waterworks purposes, but are held to protect and preserve the waters from pollution, the city is authorized to lease them under specified restrictions. § 21.

Whenever the city council shall resolve to condemn any property it is required to have filed, in the office of the clerk of the town or city where any of the lands lie, a

statement giving a description of the property taken. Thereupon the title shall vest in the city in fee simple, except where a less estate is specified. The city is authorized to take possession, but not to do so without the consent of the owner, until after the expiration of a year from the date of filing such statement. Payment for the property taken is to be made forthwith if the city and the owner agree upon the price. If not, the owner is authorized within one year after notice of the taking, or, if not notified, within two years from the date of filing the statement, to have an assessment of damages by a jury, or at his option, by a commission, upon petition to the Superior Court. Upon the entry of judgment the owner may have execution issued against the city. § 23.

Buildings or improvements on lands actually taken may be sold, disposed of or removed when necessary to prevent obstruction to the work. § 25.

The city is given power to borrow all money necessary to secure such water supply, including lands, etc., either by purchase or condemnation and to issue bonds and notes therefor. § 26.

The plaintiff in error in No. 219 has a number of cotton mills and other property interests within the area sought to be condemned, and is a taxpayer in the City of Providence. The plaintiff in error in No. 220 has, within the same area, water powers and privileges and numerous parcels of land upon which are power plants, transmission lines, fixtures and machinery, used in the business of generating and distributing electricity for light, heat and power. Plaintiff in error in No. 221 has a residence and numerous buildings and improvements, together with water rights and privileges connected therewith, situated in the same area, and is a taxpayer in the City of Providence.

The Water Supply Board, acting under this statute, prepared a description and plat of the lands proposed to

be taken, which was submitted to the city council for action. The council adopted a resolution asserting a taking of lands and interests within the defined area, including property of the plaintiffs in error, the title so taken, so far as material here, being in fee simple.

Plaintiffs in error having challenged the constitutionality of the act, the Superior Court certified the three cases to the State Supreme Court for a determination of the questions, in accordance with the provisions of a state statute. General Laws, c. 298, § 1. The Supreme Court decided that the statute was not in conflict with the Constitution of the United States; and thereupon the record, with its decision certified thereon, was sent back to the Superior Court for further proceedings. The last named court dismissed the bills and from its decree the case comes here on writ of error.

The legislation is assailed as contravening the provisions of the Fourteenth Amendment of the Federal Constitution.

*First.* It is contended that the statute imposes a burden upon the taxpayers of the City of Providence by authorizing an expenditure, which in part is for the benefit of other municipalities or of companies outside the city, that are either not required to contribute to such expenditure or whose contributions do not constitute just compensation. The basis of this complaint, in so far as it relates to other municipalities and districts, is that they are given the right to take water upon payment of fair wholesale rates therefor, and that these rates need bear no relation to the additional cost incident to the contingency of their coming in.

That the taxpayers of one municipality may not be taxed arbitrarily for the benefit of another may be assumed; but that is not the case here presented. The communities to be supplied are those within the drainage area of the waters authorized to be taken. These waters

are under the primary control of the State and in allowing the City of Providence to appropriate them, it was entirely just and proper for the legislature to safeguard the necessities of other communities who might be dependent thereon, and to that end to impose upon the City of Providence such reasonable conditions as might be necessary and appropriate. Municipalities are political subdivisions of the State and are subject to the will of the legislature, *Trenton v. New Jersey, ante,* 182, and may be compelled not only to recognize their legal obligations but to discharge obligations of an equitable and moral nature as well. *Guthrie National Bank v. Guthrie,* 173 U. S. 528, 537. The requirement here in question is one well within the rule. Specifically, it is objected that the act does not require these other communities to bear a proportionate part of the cost of acquisition, construction and maintenance. The special facts which led the legislature to direct payment at wholesale rates, instead of upon the basis of sharing in the cost of the enterprise, or of some other, we need not consider. It may have been, as suggested, that there were inherent difficulties in the way of making such an apportionment. But it is enough to say that the method selected is one within the scope of legislative discretion and not obnoxious to the Federal Constitution. See *County of Mobile v. Kimball,* 102 U. S. 691, 703–704; *Williams v. Eggleston,* 170 U. S. 304; *Davidson v. New Orleans,* 96 U. S. 97, 106. The legislature is not precluded from putting a burden upon one municipality because it may result in an incidental benefit to another. *County of Mobile v. Kimball, supra,* at pp. 703–704. Moreover, we cannot assume that the fair wholesale rates to be paid by these outside communities will be less than just compensation for what they get.

The provision in respect of furnishing water to water companies within the area defined is not compulsory, but

permissive, and leaves the city free to fix terms and conditions. It simply gives the city an opportunity to dispose of water, which for the time being it may not need, for compensation; something that is purely incidental to the main purposes of the legislation. No constitutional objection to it is now perceived. *Kaukauna Water Power Co.* v. *Green Bay & Mississippi Canal Co.,* 142 U. S. 254, 273; *United States* v. *Chandler-Dunbar Water Power Co.,* 229 U. S. 53, 72, 73; *Rochester* v. *Briggs,* 50 N. Y. 553, 563. In any event, it is a separable provision and it will be time enough to consider the question of its constitutionality when some attempt is made to carry it into effect.

*Second.* The act, it is asserted, denies the equal protection of the laws, among other things, by permitting the owner of a business established prior to the passage of the act to recover for injury thereto while withholding such compensation from one whose business has been established since; and by allowing a mill owner to recover the cost of removing his machinery to a new location within the New England States, while denying a similar right to one desiring to move to a location elsewhere. It is further asserted by plaintiffs in error, in their capacity as taxpayers, that the effect of allowing these and other consequential damages is to deprive them of their property without due process of law.

Injury to a business carried on upon lands taken for public use, it is generally held, does not constitute an element of just compensation (*Cox* v. *Philadelphia, etc., R. R. Co.,* 215 Pa. St. 506; 2 Lewis on Eminent Domain, 3d ed., § 727), in the absence of a statute expressly allowing it. *Whiting* v. *Commonwealth,* 196 Mass. 468; *Oakland* v. *Pacific Coast Lumber Co.,* 171 Cal. 392, 398. This statute therefore does not deny a right; it grants one, and limits it to a business already established. We cannot say that such a classification is unreasonable or

arbitrary—and certainly, it is not clearly so. The law-making body legislated with reference to an existing situation. One who came after the enactment and established a business did so with notice that the extra-constitutional compensation provided for would not apply to him. In the difference between an owner who had established a business without notice that his property would be required for public use and one who proceeds in the face of such notice, the legislature evidently found a sufficient and proper basis for classification, and we are not prepared to say that its conclusion was so palpably arbitrary as to fall within the prohibitions of the Fourteenth Amendment. See *Arkansas Natural Gas Co.* v. *Arkansas Railroad Commission,* 261 U. S. 379, and cases cited.

If the geographical limitation upon the liability to pay for the removal of machinery, could be said to bring about a classification, the principles just discussed would control; but, in fact, there is no classification. The right is extended to all mill owners, who choose to avail themselves of it, to recover the cost of removal within the defined territory. Ordinarily, the cost of removing personal property from land taken is not a proper element of damage unless made so by express statute (2 Lewis on Eminent Domain, 3d ed., § 728); and it was not an unconstitutional exercise of power for the legislature, in creating the right, to define its extent. Other provisions of the statute alleged to be discriminatory cannot be differentiated in principle from those just discussed.

In respect of the contention that the statute extends the right to recover compensation so as to include these and other forms of consequential damages and thus deprives plaintiffs in error, as taxpayers of the city, of their property without due process of law, we need say no more than that, while the legislature was powerless to diminish the constitutional measure of just compensation, we are aware of no rule which stands in the way of an extension

of it, within the limits of equity and justice, so as to include rights otherwise excluded. As stated by the Supreme Court of Massachusetts in *Earle* v. *Commonwealth,* 180 Mass. 579, 583, speaking through Mr. Justice Holmes, who was then a member of that court: " Very likely the . . . rights were of a kind that might have been damaged if not destroyed without the constitutional necessity of compensation. But some latitude is allowed to the Legislature. It is not forbidden to be just in some cases where it is not required to be by the letter of paramount law."

*Third.* We next consider the contention that the act permits the taking of property and grants the power to lease, sell or dispose of it without an offer to pay compensation therefor or a determination of it in advance. It has long been settled that the taking of property for public use by a State or one of its municipalities need not be accompanied or preceded by payment, but that the requirement of just compensation is satisfied when the public faith and credit are pledged to a reasonably prompt ascertainment and payment, and there is adequate provision for enforcing the pledge. *Sweet* v. *Rechel,* 159 U. S. 380, 400, 404, 407; *Williams* v. *Parker,* 188 U. S. 491, 502–503; *Crozier* v. *Krupp,* 224 U. S. 290, 306; *Bragg* v. *Weaver,* 251 U. S. 57, 62; *Hays* v. *Port of Seattle,* 251 U. S. 233, 238; *Adirondack Ry. Co.* v. *New York,* 176 U. S. 335, 349. Under the provisions of § 23 of the statute, if the owner and the city agree upon the amount, payment is to be made forthwith. If they do not agree, the owner at any time within a year after notice of the taking, or, if not notified, at any time within two years after the public filing of the statement thereof, may proceed in the Superior Court by petition to have the compensation assessed by a jury, or, at his option, by a commission. For a year in the meantime, he may not be deprived of possession without his consent. As an additional guar-

anty that the judgment obtained will be paid—and paid promptly—the owner under the statute may have execution issued against the city. These provisions adequately fulfill the requirement in respect of the ascertainment and payment of just compensation, within the principles established by the decisions of this Court last above cited.

Nor is there anything in the complaint that the city, after taking but before payment, is authorized to lease, sell or dispose of any lands taken and held to protect the purity of the water supply, and to remove buildings or improvements which interfere with the progress of the work. That these are simply incidents in the administration of the statute and in the management of property, title to which has passed to the city, which are of no concern to plaintiffs in error and which in no manner affect the validity of the act, is too clear to require anything beyond statement. See *Sweet* v. *Rechel, supra,* pp. 404, 407.

*Fourth.* Finally, the validity of the act is challenged as denying due process of law, on the ground that the question of the necessity for taking the property has not been determined by the legislature itself, but is relegated to the city to decide *ex parte,* without appeal or opportunity for hearing and decision by an impartial tribunal. That the necessity and expediency of taking property for public use is a legislative and not a judicial question is not open to discussion. *Adirondack Ry. Co.* v. *New York, supra,* at p. 349; *Shoemaker* v. *United States,* 147 U. S. 282, 298; *United States* v. *Gettysburg Electric Ry. Co.,* 160 U. S. 668, 685; *Boom Co.* v. *Patterson,* 98 U. S. 403, 406. Neither is it any longer open to question in this court that the legislature may confer upon a municipality the authority to determine such necessity for itself. *Bragg* v. *Weaver, supra,* at p. 58; *Sears* v. *Akron,* 246 U. S. 242, 251.

The question is purely political, does not require a hearing, and is not the subject of judicial inquiry. The

legislature here, while investing the city with the authority to determine it, in each instance, has carefully circumscribed the power by limiting its exercise within a definitely restricted area. The city may take less than this area, but cannot take more.

The decree of the state court is

*Affirmed.*