**UNITED STATES v. 277.97 ACRES OF LAND et al.**

No. 1182.

United States District Court
S. D. California, Northern Division.

May 1, 1953.

Walter S. Binns, U. S. Atty., Joseph F. McPherson, Sp. Asst. to Atty. Gen., of Cal., and T. Keister Greer, Special Atty., Lands Division, Department of Justice, Los Angeles, Cal., for the plaintiff.

Crossland & Crossland, Fresno, Cal., Coffee & Wolfe, Madera, Cal., Davis & Boies, Fresno, Cal., for the defendants.

YANKWICH, Chief Judge.

On July 11, 1952, the Government of the United States filed its complaint in condemnation seeking to condemn 277.97 acres of land in the County of Madera, California. On the same day, a declaration of taking was filed, executed by the Solicitor of the Department of the Interior, pursuant to authority delegated to him by the Secretary of the Interior, under Section 2 of Reorganization Plan No. 3 of 1950, 15 F.R. 3174, 5 U.S.C.A. following section 133z-15, and Section 28 of Order No. 2509 as amended, 15 F.R. 5058.

The Declaration of Taking stated that it was filed under Section 1 of the Act of February 26, 1931, 46 Stat. 1421, 40 U.S.C.A. § 258a. It recited, among other things:

"*First*: (a) The interest hereinafter described is taken pursuant to and under the authority of the provisions of the Acts of Congress approved June 17, 1902 (32 Stat. 388, 43 U.S.C., 1946 ed., sec. 391 [43 U.S.C.A. § 391]); August 26, 1937 (50 Stat. 844), as amended by the act of October 17, 1940 (54 Stat. 1198); acts amendatory thereof or supplementary thereto; and the Interior Department Appropriation Act of 1952 (Public Law 136, 82d Congress [65 Stat. 248]).

(b) The said interest has been selected by me for acquisition by the United States for use in connection with the Central Valley Project, California, of the Bureau of Reclamation, United States Department of the Interior, and is required for immediate use.

(c) In my opinion, it is necessary, advantageous, and in the interest of the United States that said interest be acquired by judicial proceedings as authorized by the Acts of Congress approved August 1, 1888 (25 Stat. 357, as amended, 40 U.S.C., 1946 ed., Supp. III, sec. 257 [40 U.S.C.A. § 257]), and February 26, 1931 (46 Stat. 1421, 40 U.S.C., 1946 ed., secs. 258a to 258e [40 U.S.C.A. §§ 258a to 258e]).

(d) The public uses for which said interest is taken are for the purposes of improving navigation, regulating the flow of the San Joaquin River and the Sacramento River, controlling floods, providing for storage and for the delivery of the stored waters thereof; for construction under the provisions of the Federal reclamation laws of such distribution systems as the Secretary

of the Interior deems necessary in connection with lands for which said stored waters are to be delivered; for the reclamation of arid and semiarid lands and lands of Indian reservations; for the generation, distribution and sale of electric energy as a means of financially aiding and assisting such undertakings, for the purpose of permitting the full utilization of the works constructed to accomplish the aforesaid purposes, and other beneficial uses."

The Act of October 17, 1940, 54 Stat. 1198, to which reference is made in the foregoing excerpt from the Declaration of Taking, reads in part as follows:

"The second proviso in section 2 of the Act of August 26, 1937 (50 Stat. 844, 850), authorizing the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes, is hereby amended to read as follows: 'Provided further, That the entire Central Valley project, California, heretofore authorized and established under the provisions of the Emergency Relief Appropriation Act of 1935 (49 Stat. 115) and the First Deficiency Appropriation Act, fiscal year 1936 (49 Stat. 1622), is hereby reauthorized and declared to be for the purposes of improving navigation, regulating the flow of the San Joaquin River and the Sacramento River, controlling floods, providing for storage and for the delivery of the stored waters thereof, for construction under the provisions of the Federal reclamation laws of such distribution systems as the Secretary of the Interior deems necessary in connection with lands for which said stored waters are to be delivered, for the reclamation of arid and semi-arid lands and lands of Indian reservations, and other beneficial uses, and for the generation and sale of electric energy as a means of financially aiding and assisting such undertakings, and in order to permit the full utilization of the works constructed to accomplish the aforesaid purpose."

Certain defendants have challenged the right of the Government to take the property. They argue that it is not taken for a public use.

The Declaration of Taking designates the purposes as being: (1) navigation, (2) regulation of the flow of the San Joaquin and Sacramento Rivers, (3) flood control, (4) reclamation, (5) generation, distribution, and sale of electric energy, and (6) the construction of such distribution systems as the Secretary of the Interior deems necessary.

■■■ The power of eminent domain is one of the most important attributes of sovereignty: Kohl v. United States, 1875, 91 U.S. 367, 371, 23 L.Ed. 449; United States v. Jones, 1883, 109 U.S. 513, 3 S.Ct. 346, 27 L.Ed. 1015; Albert Hanson Lumber Co. v. United States, 1923, 261 U.S. 581, 587, 43 S.Ct. 442, 67 L.Ed. 809; United States ex rel. T.V.A. v. Powelson, 1943, 319 U.S. 266, 279–280, 63 S.Ct. 1047, 87 L.Ed. 1390; Garrow v. United States, 5 Cir., 1942, 131 F.2d 724, 725, 726. The only limitation is that contained in the Fifth Amendment, that just compensation be awarded. The property owner whose property the Federal Government seeks to condemn has only one right,—namely, the right to compensation. Joslin Manufacturing Co. v. City of Providence, 1923, 262 U.S. 668, 675, 43 S.Ct. 684, 67 L.Ed. 1167; Rindge Co. v. Los Angeles County, 1923, 262 U.S. 700, 709, 43 S.Ct. 689, 67 L.Ed. 1186; United States ex rel. T.V.A. v. Welch, 1946, 327 U.S. 546, 554–555, 66 S.Ct. 715, 90 L.Ed. 843.

■■■ Whether a particular property is needed for public use presents a legislative or executive, and not a judicial question. Rindge v. Los Angeles County, supra, 262 U.S. at page 709, 43 S.Ct. at page 693; United States v. Carmack, 1946, 329 U.S. 230, 237–247, 67 S.Ct. 252, 91 L.Ed. 209. As said in Joslin Manufacturing Co. v. City of Providence, supra, 262 U.S. at page 678, 43 S.Ct. at page 689.

"That the necessity and expediency of taking property for public use is a legislative and not a judicial question is not open to discussion. Adirondack

Ry. Co. v. [People of State of] New York, supra, 176 U.S. [335] at page 349, 20 S.Ct. 460, 44 L.Ed. 492; Shoemaker v. United States, 147 U.S. 282, 298, 13 S.Ct. 361, 37 L.Ed. 170; United States v. Gettysburg Electric Ry. Co., 160 U.S. 668, 685, 16 S.Ct. 427, 40 L. Ed. 576; Boom Co. v. Patterson, 98 U.S. 403, 406, 25 L.Ed. 206. Neither is it any longer open to question in this court that the Legislature may confer upon a municipality the authority to determine such necessity for itself. Bragg v. Weaver, supra, 251 U.S. [57] at page 58, 40 S.Ct. 62, 64 L.Ed. 135; Sears v. City of Akron, 246 U.S. 242, 251, 38 S.Ct. 245, 62 L.Ed. 688.'"

While this is said of state agencies, the principle applies with equal, if not greater, force to federal agencies. For, under the mandate of the Fourteenth Amendment, the Supreme Court, when confronted with the exercise of the power of eminent domain by the state, may question the arbitrariness or capriciousness of a project or of the manner in which it was executed, and determine judicially whether a use is public. As said in City of Cincinnati v. Vester, 1930, 281 U.S. 439, 446, 50 S.Ct. 360, 362, 74 L.Ed. 950:

> "It is well established that, in considering the application of the Fourteenth Amendment to cases of expropriation of private property, the question what is a public use is a judicial one. In deciding such a question, the Court has appropriate regard to the diversity of local conditions and considers with great respect legislative declarations and in particular the judgments of state courts as to the uses considered to be public in the light of local exigencies. But the question remains a judicial one which this Court must decide in performing its duty of enforcing the provisions of the Federal Constitution."

See 2 Nichols on Eminent Domain, 3rd ed., 1950, sec. 7.4, pp. 467–468.

Ordinarily, it will not do so in the case of a federal agency when Congress has explicity given the power to acquire property.

United States ex rel. T. V. A. v. Welch, 1946, 327 U.S. 546, 551–552, 66 S.Ct. 715, 90 L.Ed. 843. The reason is stated with brevity in the case just cited:

> "We think that it is the function of Congress to decide what type of taking is for a public use and that the agency authorized to do the taking may do so to the full extent of its statutory authority." United States ex rel. T. V. A. v. Welch, supra, 327 U.S. at pages 551–552, 66 S.Ct. at page 717.

The same thought is expressed in United States v. Garmack, 1946, 329 U.S. 230, 247, 67 S.Ct. 252, 260, 91 L.Ed. 209:

> " * * * The comparative desirability and necessity for the site were matters for legislative or administrative determination rather than for a judicial finding."

That each of the purposes enumerated,—navigation, reclamation, storage for irrigation or power purposes,—is a public purpose has been firmly established. Reference to some of the leading cases dealing with these subjects will suffice. As to navigation, we refer to The Daniel Ball v. United States, 1871, 10 Wall. 557, 563, 19 L.Ed. 999; United States v. Appalachian Electric Power Co., 1940, 311 U.S. 377, 407–419, 61 S.Ct. 291, 85 L.Ed. 243; Davis v. United States, 9 Cir., 1950, 185 F.2d 938, 941–942. As to control of navigable streams by dams and other structures for the purpose of storing water for irrigation, reclamation or power purposes, the right of the Congress has been firmly established by the Supreme Court. See, State of Arizona v. State of California, 1931, 283 U.S. 423, 455–456, 51 S.Ct. 522, 75 L.Ed. 1154; Tennessee Electric Power Co. v. Tennessee Valley Authority, 1939, 306 U.S. 118, 59 S.Ct. 366, 83 L. Ed. 543.

� Whether a project is in aid of one rather than another of the enumerated public uses is not the subject of judicial inquiry. Nor will the courts inquire into the question whether a particular structure is necessary. Oceanic Stream Navigation Co. v. Stranahan, 1909, 214 U.S. 320, 340, 29 S. Ct. 671, 53 L.Ed. 1013; James Everard's Breweries v. Day, 1924, 265 U.S. 545, 559,

44 S.Ct. 628, 68 L.Ed. 1174. Even when authority is lacking for one of the stated objects, its exercise will be sustained if any one of the objects designated in the legislation by the Congress is a valid public use. State of Arizona v. State of California, supra, 283 U.S. at page 456, 51 S.Ct. at page 526; United States v. Commodore Park, Inc., 1945, 324 U.S. 386, 391–392, 65 S.Ct. 803, 89 L.Ed. 1017.

The two rivers mentioned have long been recognized as navigable streams. But even if their use for the purpose of navigation be remote, it cannot be denied that the construction of these works for reclamation, irrigation and power purposes is for a public use. The distributing system for which the land is needed is a part of the Central Valley project authorized by the Congress. The Act of October 17, 1940, c. 895, § 2, 54 Stat. 1198, 1199, in reauthorizing the Central Valley project, expressly stated that one of its purposes was the construction of "such distribution systems as the Secretary of the Interior deems necessary". The Act of September 26, 1950, Public Law 839, 81st Congress, 64 Stat. 1036, also reauthorized the entire Central Valley project, and employed the same language just quoted.

The defenses asserted present no factual or legal issue for determination, because the purposes recited in the Declaration of Taking are clearly recognized public uses which carry into execution the mandate of the Congress expressed in the Acts referred to. And the Congress, having left the determination of the need for particular property for such distribution system to the Secretary of the Interior, the courts have no right to question the manner in which that official exercised the delegated power. United States v. Carmack, 1946, 329 U.S. 230, 237–243, 67 S.Ct. 252, 91 L.Ed. 209.

Equally untenable is the contention that, as the purpose of the taking is the construction of a distribution system, a contract with an irrigation district must precede the taking. The Act of May 25, 1926, provides:

"No water shall be delivered upon the completion of any new project or new division of a project initiated after May 25, 1926, until a contract or contracts in form approved by the Secretary of the Interior shall have been made with an irrigation district or irrigation districts organized under State law providing for payment by the district or districts of the cost of constructing, operating, and maintaining the works during the time they are in control of the United States, * * *". 43 U.S.C.A. § 423e.

The object of the section is stated in the section following it in this manner:

"The purpose of sections 423 to 423g of this title is the rehabilitation of the several reclamation projects and the insuring of their future success by placing them upon a sound operative and business basis, and the Secretary of the Interior is directed to administer said sections to those ends." 43 U.S.C.A. § 423f, Act of May 25, 1926, c. 383, Sec. 48, 44 Stat. 650.

A similar provision conditioning delivery of water on the execution of a contract with an "organization" is contained in the recodified reclamation and irrigation statute of 1939. The policy of this Act is expressed in the first section entitled, "Declaration of policy", which reads:

"For the purpose of providing for United States reclamation projects a feasible and comprehensive plan for an economical and equitable treatment of repayment problems and for variable payments of construction charges which can be met regularly and fully from year to year during periods of decline in agricultural income and unsatisfactory conditions of agriculture as well as during periods of prosperity and good prices for agricultural products, and which will protect adequately the financial interest of the United States in said projects, obligations to pay construction charges may be revised or undertaken pursuant to the provisions of sections 375a, 380a, 387–389 and 485–485k of this title." Act of Aug. 4, 1939, c. 418, Sec. 1, 53 Stat. 1187, 43 U.S.C.A. § 485.

The aim in both instances is to insure continuous development of water resources

by the United States and what the statute just cited calls "an equitable treatment of repayment problems" by water users. To achieve this, a contract is made a condition precedent *to the delivery of water,* but not to the exercise of the power of eminent domain for the acquisition of land or the construction of the distributing systems. The provision means that, after the project is completed, no water *can be delivered* by the Government to any irrigation district until the contract mentioned in Section 423e has been executed.

What the Congress has sought since 1926 is to make certain that water developed by new projects or expansions of old projects shall not be turned over to distributing agencies unless,—to use the language of finance,—a "firm" contract has been entered into with a responsible irrigation district or other local public or semi-public organization. This restriction assures the attainment of the congressional aims to aid reclamation and irrigation by securing use and distribution of the water by responsible agencies after the project has been completed. As the Government enters into these reclamation and irrigation projects for the benefit of the owners of agricultural lands in various states, its power to do so would be greatly restricted if, before a project is completed, a contract for the distribution of water had to be entered into. Many of the projects take years in development. It would be burdensome to local agencies, such as irrigation districts, who depend on the exercise of their powers not only on the vote of water users, but on the vote of the voters of the district, for approval of certain of their actions, to bind themselves years in advance to a contract for use and distribution of the water. At the same time, the existence of such contracts might restrict the Government to a time limit which it might not,—in view of the need for yearly congressional appropriations for expenditures,—be able to meet.

On the other hand, *conditioning the delivery of water* on the existence of a contract, as the section explicitly says, makes the problem very simple. When the Secretary of the Interior has, under the Reclamation Bureau, or any other bureau, completed a distributing system, he is in a position to approach an irrigation district or an agency and say, "Here is water for your use which you can have by entering into the type of contract which the Congress has authorized". The irrigation district or other public or quasi-public organization, at the same time, is in a position to go to the voters of the district and say, "Here is water available to use which we can have by entering into a long-term repayment contract with the Government as the Congress has provided". A contrary interpretation would not only fly in the face of the explicit wording of the section, but would also give rise to problems which we are certain the Congress did not intend to create when it authorized these and other projects in aid of reclamation and irrigation.

The motion to strike the designated defenses is granted.