**A. G. DAVIS ICE COMPANY, Inc. et al., Defendants, Appellants,**

v.

**UNITED STATES of America, Plaintiff, Appellee.**

**No. 6702.**

United States Court of Appeals First Circuit.

Heard June 7, 1966.

Decided July 11, 1966.

Charles S. McLaughlin, Boston, Mass., with whom George A. McLaughlin and The McLaughlin Brothers, Boston, Mass., were on brief, for appellants.

Edmund B. Clark, Attorney, Department of Justice, with whom Edwin L. Weisl, Jr., Asst. Atty. Gen., W. Arthur Garrity, Jr., U. S. Atty., John M. Callahan, Asst. U. S. Atty., and Roger P. Marquis, Attorney, Department of Justice, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

## OPINION

McENTEE, Circuit Judge.

This is a proceeding to fix just compensation for property taken by condemnation. In October 1962 the government took certain business property [1] located in downtown Lexington, Massachusetts, as a site for a new post office. The property which was owned by the appellant Davis [2] and leased by it to the appellant Fawcett [3] consists of some 19,451 square feet of land with several single

---

1. Although situated in a residential zone, this property enjoyed the status of a preexisting non-conforming business use.

2. A. G. Davis Ice Company, Inc.

3. Fawcett Fuel Corporation.

story frame buildings. In the yard was a metal loading platform and four large underground tanks with a total capacity of 40,250 gallons. At the time of the taking these tanks were being used by the Atlantic Refining Company (Atlantic) for the storage and distribution of heating oil under a sublease of the premises from Fawcett. There is no dispute between the parties with reference to the physical facts or that the highest and best use of this real estate was for bulk fuel storage.

In 1953 Davis leased this property to Fawcett for a term of years at a net rental of $3,000 a year.[4] The lease provided for termination by the lessee in the event the property could no longer be used for fuel storage because of zoning or inability to obtain the necessary permits. In 1958 this lease was amended to give the lessee an option to renew for three consecutive five-year terms beginning in 1958. The annual net rent of $3,000 remained unchanged. In the same year Fawcett subleased the premises to Atlantic[5] under a bulk storage lease agreement which provided for "put through" payments to Fawcett of .15 of a cent for each gallon of petroleum products passing through the premises. At the time the government condemned the property[6] Fawcett was realizing a net income of $7,000 a year from this sublease over and above the $3,000 in rent it was required to pay Davis. At that time the Davis-Fawcett lease had about eleven years to run, assuming Fawcett exercised its options.

The case went to trial before a jury on the question of the fair market value of the property. The major part of the appellants' case was based on the Atlantic sublease which they sought to introduce in evidence. The trial court excluded this sublease as evidence of the value of the property and also rejected any figures as to gallonage delivered under it. Appellants then attempted to present expert testimony based on the net income from the sublease as evidence of the true value of the property. The trial court also excluded this testimony and ruled that only Davis as owner had any rights in this case.[7]

The jury returned a verdict of $37,000 as just compensation for the property taken and judgment was entered in that amount. Appellants complain that this verdict is insufficient, attributing its insufficiency to the refusal of the trial court to allow the jury to consider the evidence above mentioned and in ruling that only Davis as owner had any rights in this case. These are the only issues before us on appeal.

The long accepted general rule is that evidence of profits derived from a business conducted on property which is condemned is too speculative, uncertain and remote to be considered as a basis for computing or ascertaining its market value in condemnation proceedings. Such profits are not generally considered property within the meaning of the constitutional provision forbidding the taking of property by eminent domain except upon payment of just compensation. Bothwell v. United States, 254 U.S. 231, 233, 41 S.Ct. 74, 65 L.Ed. 238 (1920); Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 675, 43 S.Ct. 684, 67 L.Ed. 1167 (1923); Mitchell et al. v. United States, 267 U.S. 341, 345, 45 S.Ct. 293, 69 L.Ed. 644 (1925); United States v. Petty Motor Co., 327 U.S. 372, 377–378, 66 S.Ct. 596, 90 L.Ed. 729 (1946); United States ex rel. T. V. A. v. Powel-

4. Fawcett was responsible for maintenance and repair. The term of this lease was five years with an option to renew for another five years.

5. This sublease was for ten years with an option to renew for an additional five year term.

6. October 1, 1962.

7. Appellants objected separately to the ruling regarding Davis. We take it, however, that this objection was tied in with the ruling excluding the lease. As an instruction to the jury that there was to be an unapportioned verdict it was entirely proper.

son, 319 U.S. 266, 281–283, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943); Stipe v. United States, 337 F.2d 818, 821 (10th Cir. 1964).

■ The reason for this rule is that profits for any given period depend upon too many uncertain and variable factors such as weather, taxes, economic conditions and business competition. However, the rule is not without exception and qualification. "Where the character of the property is such * * * that, independently of the labor, skill or knowledge of its owner, it lends itself peculiarly to a particular use, a business based upon such use and then the profits therefrom may be considered in ascertaining the market value of the land." 4 Nichols on Eminent Domain § 13.3(2). The appellants contend that the profits from the Atlantic lease had no relation to any skill or ability of Fawcett but came from the location of the real estate with its permit and oil storage facilities and that therefore they come within this exception. In support of this contention they rely on cases like City of Revere v. Revere Const. Co., 285 Mass. 243, 189 N.E. 73 (1934). That case involved land located at an amusement park and the court pointed out "that the particular and special location of this land is an appreciable, if not the chief or exclusive factor in its value. Location may in truth make whatever profits are to be derived from the land." [8] Here, however, any profits Fawcett may have made came from its business contract with Atlantic. While the location in the instant case may have been a nonconforming business use, it was not unique. Any loss of future income from this lease was highly speculative since under it Atlantic was not required to run any gallonage through the fuel tanks and Fawcett was precluded from making a similar arrangement with anyone else either on or within 1,000 feet of the premises. Consequently, it was within the discretion of the district court, having in mind the speculative and collateral

issues involved, to exclude the matter of profits involved in the Atlantic sublease.

■■ Furthermore, the master lease was subject to cancellation before the end of the term. Such business profits are not a reliable indicator of market value. It is the value of the real estate, not the business that we are concerned with in this case. To allow evidence of past and future business profits would only confuse the value of the business with the value of the real estate. The sovereign must pay only for what it takes, not for opportunities which the owner may lose. United States ex rel. T. V. A. v. Powelson, supra, 319 U.S. at 282, 63 S.Ct. 1047. To allow the use of profits derived from the Atlantic sublease as a basis for computing damages would require the sovereign to pay for an opportunity which the owner *might* lose. This is speculation. We hold, therefore, that under the circumstances in this case the trial court did not err in excluding the evidence of business profits under the Atlantic sublease.

■ We also hold that the interests of the lessee were adequately represented and protected during the trial. No error was committed by the exclusion of the Atlantic sublease or evidence of its value to Fawcett. Condemnation is in rem and when the government condemns the fee it includes all lesser interests. The subsidiary interests in a fee cannot add to its market value and compensation for these interests must be paid out of the amount awarded for the whole. Eagle Lake Improvement Co. v. United States, 160 F.2d 182 (5th Cir. 1947).

■ The appellant Fawcett cites the case of Silberman v. United States, 131 F.2d 715 (1st Cir. 1942), in support of its position that it was not adequately represented at the trial. This case is clearly distinguishable from the instant case. In *Silberman* the lessee was not allowed to participate in the trial at all. Here Fawcett's counsel conducted the

8. Another such case is Re State Reservation, 16 Abb.M.C. (N.Y.) 159 (1884), involving property located in the Niagara River with a view of Niagara Falls.

trial for both appellants and the only evidence excluded was inadmissible whether presented on behalf of Davis or Fawcett.

Affirmed.