See also D.C., 309 F.Supp. 46.

**UNITED STATES of America upon the relation and for the use of the TENNESSEE VALLEY AUTHORITY, Plaintiff,**

v.

**544 ACRES OF LAND, MORE OR LESS, IN FRANKLIN COUNTY, TENNESSEE, Willard R. Anderson et al., Defendants.**

**Civ. A. No. 923.**

United States District Court,
E. D. Tennessee,
Winchester Division.

Sept. 26, 1969.

Robert H. Marquis, Gen. Counsel, TVA, Thomas A. Pedersen, Solicitor, TVA, Don Whitehead, and Beecham Brogan, TVA, Knoxville, Tenn., for plaintiff.

Pat B. Lynch, Ben P. Lynch, and Mike Lynch, Lynch, Lynch & Lynch, Winchester, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

The Court submitted to a jury the issue of just compensation herein, but reserved the issue of the relator's right to take that portion of the land included in the taking which lies above the floodline. The landowners claim a right to contest this reserved issue by evidentiary hearing.

■■ The necessity and expediency of taking property for public use is a purely political determination for the Legislative Branch. It is not a subject for judicial inquiry, and it requires no hearing. Joslin v. Providence (1923), 262 U.S. 668, 678, 43 S.Ct. 684, 67 L.Ed. 1167, 1176 (headnote 12). After the Legislative Branch has decided the question of the public purpose, neither the amount or character of the land to be taken for a project nor the need of particular acreage to complete the integrated plan adopted, are matters for the Judicial Branch. Berman v. Parker (1954), 348 U.S. 26, 35–36, 75 S.Ct. 98, 99 L.Ed. 27, 39 (headnote 14). These basic principles have been followed uniformly. See United States v. Bowman, C.A. 7th (1966), 367 F.2d 768, 770 [4]; United States v. Mischke, C.A. 8th (1961), 285 F.2d 628, 631; also United States ex rel. TVA v. Welch (1946), 327 U.S. 546, 551–552, 66 S.Ct. 715, 90 L.Ed. 843, 847–848 (headnote 3).

For the purpose of maintaining and operating certain properties of the United States in the interest of the national defense and for agricultural and industrial development, and to improve navigation in the Tennessee River and to control the destructive flood waters in the Tennessee River and Mississippi River basins, the Congress created a public corporation, the relator Tennessee Valley Authority. 16 U.S.C. sec. 831. It granted this corporation such powers as may be necessary or appropriate for the exercise of the powers specifically conferred upon it, 16 U.S.C. sec. 831c (g), including the specific power to acquire real estate for the construction of reservoirs at any point along the Tennessee River or any of its tributaries, 16 U.S.C. sec. 831c(i), and the power to exercise in the name of the United States of America the right of eminent domain, title to real estate purchased or acquired by condemnation to be taken in the name of the United States of America, which thereafter is entrusted to the relator as the agent of the United States to accomplish the purpose of 16 U.S.C. ch. 12A. 16 U.S.C. sec. 831c(h). This right of condemnation of lands extends to such " * * * which, in the opinion of the [relator] Corporation, are necessary to carry out the provisions of this chapter [16 U.S.C. ch. 12A]. * * *" 16 U.S.C. sec. 831x, as amended Sept. 28, 1968, Pub.L. 90–536, sec. 1, 82 Stat. 885.

■ While all appropriations necessary to carry out the provisions of 16 U.S.C. ch. 12A are authorized, 16 U.S.C.

sec. 831z, the relator sought an appropriation from the Congress of funds to enable the relator to proceed with the Tims Ford dam and reservoir project.*

* The purpose and scope of this project are described in the record of the House Subcommittee of the Committee on Appropriations, as follows:

Tims Ford and Reservoir

Purpose and scope

Tims Ford dam and reservoir, construction of which began in 1966, is a multipurpose project located in the upper reaches of the Elk River which flows into the Wheeler reservoir on the Tennessee River. Tims Ford will increase the effectiveness for flood control of the existing TVA reservoir system below Chattanooga. It will furthermore reduce flood damages on about 7,800 acres of downstream agricultural land within the Elk River Watershed by about 80 percent, thus stimulating more intensive agricultural use of the land, and it will reduce flooding at Fayetteville, Tennessee.

Tims Ford will add peaking capability of 45,000 kw and average annual generation of 64,000,000 kwh to the regional power supply.

Tims Ford reservoir and its related shoreline lands will constitute an important new resource in the upper Elk River drainage. - The planned reservoir operating levels, the character of much of the surrounding terrain, the high order of accessibility afforded by the road pattern, and the central location with respect to such towns as Fayetteville, Lewisburg, Shelbyville, and Tullahoma, Tennessee, and the City of Huntsville, Alabama, will make this an unusually attractive center for recreation activity and for fishing and wildfowl hunting. These values loom largest in the economic appraisal of the project. In addition, the reservoir will provide a large and dependable source of water supply to accommodate future industrial and municipal demands in the area and will make it possible to improve the quality of water available downstream for municipal and industrial uses. Values will be realized from subsequent sales of land acquired for project purposes and additional increases in land values will accrue to the people in the region. The Tims Ford project is an important element in a comprehensive economic development program for the Elk River region. This program is being carried out in cooperation with the local people and their public agencies. The scope of local participation has been established by contract and includes local assumption of selected management and maintenance responsibilities, repayments to TVA of $3 million plus interest, and commitments for certain long-range development activities [Hearings Before a Subcomm. of the House Comm. on Appropriations, 90th Cong., 1st Sess., pt. 2, at 1000-1001 (1967)]. The nature of the participation by the state agency is also described in the hearings before another session of the same subcommittee, as follows:

The Tims Ford project is more than a dam and reservoir. It is being built as a major new land-water resource for an area in which the people are organized and working actively to emerge from a predominantly agrarian economy. TVA plans that the local people, acting through the Tennessee Elk River Development Agency, will have important responsibilities for managing the Tims Ford project. These responsibilities will include obligations to utilize local benefits of the project, in part, to return a portion of the Federal investment in it, and in further part to assist in financing local development programs.

&ast; &ast; &ast; &ast; &ast;

The Tims Ford project is an important element in a comprehensive economic development program for the Elk River region. The program touching all resources—natural and human—is cooperative with the people of the region and their public agencies. The State of Tennessee has created an agency empowered to contract with TVA for local participation in development and management of the Tims Ford project. Agreement in principle has been reached as to these local participation arrangements. These include local assumption of essentially full project management and major maintenance responsibilities; repayment to TVA totaling approximately $3 million plus interest, to be derived largely from proceeds from project term developmental activities by the Elk River Development Agency [Hearings Before a Subcomm. of the House Comm. on Appropriations, 89th Cong., 2d Sess., pt. 2, at 779-780].

The following thought was expressed by Donald R. King, Chairman, Tennessee Elk River Development Agency, while testifying before the Senate Appropriations Subcommittee:

We entered into an agreement where the agency, the association, and TVA will provide—will work together toward an overall development of the reservoir,

H.R. 9920, 89th Cong., 1st Sess. The Court notices judicially, United States v. An Easement and Right-of-Way, Etc., D.C.Ky. (1965), 246 F.Supp. 263, 269 [4], affirmed C.A. 6th (1967), 375 F.2d 120, that the relator advised the Congress fully of the nature, scope and purpose of the Tims Ford dam and reservoir project. That a part of the lands acquired for this public purpose by the relator TVA may be deeded or transferred to the Tennessee Elk River Development Agency, for the development and effectuation of plans and programs for comprehensive development of marginal lands around the reservoir, including the control and development of water resources, Public Acts of Tennessee of 1963, ch. 336, does not render the taking, or any part thereof, arbitrary or capricious. United States v. Bowman, *supra*, 367 F.2d at 770 [5]; Wilson v. United States, C.A. 10th (1968), 350 F.2d 901, 907 [8].

■ The landowners cannot complain that the Congress delegated to the relator TVA a determination of the specific lands to be taken for the public use, or that the relator TVA itself may delegate some of its responsibility to a state agency to complete the integrated plans of development and management of this project. See Berman v. Parker, *supra*, 348 U.S. at 36, 75 S.Ct. 98, 99 L.Ed. 27 (headnote 15), cited in Government of Guam v. Moylan, C.A. 9th (1969), 407 F.2d 567, 568; United States v. Forbes, D.C.Ala. (1919), 259 F. 585, 592; see also United States v. Certain Parcels of Land, Etc., D.C.Tenn., 175 F.Supp. 418.

The President has authorized and directed the directors of the relator TVA to make such general plans as may be necessary and suitable to aid the proper use and development of the Tennessee River drainage basin, and of the adjoining territory as may be related to or materially affected by the development consequent to 16 U.S.C. ch. 12A, and to promote the general welfare of the citizens of said area, within the limits of appropriations made therefor by the Congress. Executive Order no. 6161 of June 8, 1933, reference 16 U.S.C. secs. 831w, 831v.

Such plans may relate to the proper use of marginal lands, 16 U.S.C. sec. 831v(4), and the relator is empowered to make all " * * * necessary acquisitions of land, in order to effectuate the purposes of the chapter [16 U.S.C. ch 12A]; and may cooperate with * * * State * * * agencies to that end. * * * " 16 U.S.C. sec. 831c (*l*). That chapter is to be " * * * liberally construed to carry out the purposes of Congress * * *", and the only limitation upon the relator in acquiring property is that " * * * no real estate shall be held except what is necessary in the opinion of the [TVA] Board to carry out plans and projects actually decided upon requiring the use of such land * * *". 16 U.S.C. sec. 831dd.

■ Thus, it appears as a matter of law that the relator was fully authorized and empowered to take the land above the floodline in this proceeding. The relator seeks a partial summary judgment

---

the land surrounding the reservoir, where we can get the most from economic development of this area.

We have entered into contracts with TVA, or memorandums of understanding; we passed resolutions stating that we will provide local financial participation in this project, and that the local financial participation which can be recaptured will be returned to the Treasury of the United States.

We think this is a unique project, and we think, based on this, we will recapture all the benefits.

The agency, in our proposed agreement with TVA, will control and assist in the development of the shorelines. It will not be a Federal agency selling land. It will be an agency which is dedicated to the proposition that this land will be put to its best possible use, and anything that can be recovered will be returned to the Treasury of the United States [Hearings on H.R. 9220 Before the Subcomm. of the Senate Comm. on Appropriations, 89th Cong., 1st Sess., pt. 4, at 158–159].

herein on that issue. It is the duty of the Court to render such judgment forthwith, the pleadings and matters judicially noticed by the Court showing that there is no genuine issue of any material fact, and that the relator is entitled to a partial judgment thereon as a matter of law. Rules 56(c) and (d), Federal Rules of Civil Procedure.

As to this issue, the landowners are denied all relief. Partial summary judgment will enter. Rule 58, Federal Rules of Civil Procedure.