(Nos. 37652 and 37653 Cons.—

THE CITY OF CHICAGO, Appellee, *vs*. R. ZWICK COMPANY *et al.*—(GUILLERMO GONZALES *et al.*, Appellants.)

*Opinion filed February 26, 1963.*

OVERTON, MARKS, SIMONS & MOORE, of Chicago, (GEORGE W. OVERTON, FREDERIC D. HOUGHTELING, F. RAYMOND MARKS, JR., and DONALD PAGE MOORE, of counsel,) for appellants.

JOHN C. MELANIPHY, Corporation Counsel, and MILTON P. WEBSTER, JR., both of Chicago, (ALBERT E. JENNER, JR., THOMAS A. FORAN, and KEITH F. BODE, of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The Chicago Land Clearance Commission filed separate eminent domain actions to acquire land in two of three areas on the near west side of Chicago, which it had declared slum and blighted areas. The Commission was thereafter dissolved and its functions are now exercised by the Urban Renewal Department of the city of Chicago under the Urban Renewal Consolidation Act. (Ill. Rev. Stat. 1961, chap. 67½, pars. 91.101—91.136.) The city of Chicago has been substituted as plaintiff, and the causes are consolidated for this appeal.

The Harrison-Halsted tract was designated as a slum and blighted area in 1956. Most of it was cleared and plans made for its redevelopment as a residential area. Early in 1961 an agreement was reached with the trustees of the University of Illinois for the university's Chicago campus to be located upon the Harrison-Halsted and adjacent tracts. The Land Clearance Commission thereafter adopted resolutions designating the Roosevelt-Blue Island and Congress-Racine tracts as slum and blighted areas. These designations received the approval of the Plan Commission, the city council and the State Housing Board.

Traverses were filed on various grounds. Evidence was heard on the factual issue of whether the Roosevelt-Blue

Island tract was a slum and blighted area. The trial court found in the affirmative, and overruled the traverses as matters of law on all other points. Thereafter the issues of just compensation were tried, judgments were entered upon the verdicts and the city deposited the amounts of the judgments with the county treasurer. No question is raised in this appeal as to the sufficiency of the awards.

The essence of defendants' first constitutional objection is that failure to give them a full hearing before the designation of an area as slum and blighted, and an immediate separate review prior to an eminent domain proceeding, was a violation of due process. It is argued that the determination of necessity in the case of a highway department, school or other governmental unit is merely incidental to its function, while the Commission (now Department of Urban Renewal) was created for the primary purpose of designating and condemning slum and blighted areas. It is said that the act of designating an area as slum and blighted long in advance of the exercise of the right of eminent domain adversely affects the liquidity and market value of the property. The conclusion is then drawn that since a hearing on an alleged wrongful designation after the event cannot provide an adequate remedy, an inquiry into the entire background of the factual determination should be permitted in advance of eminent domain proceedings.

The second constitutional argument is that failure to grant a hearing before condemnation proceedings are filed denies defendants equal protection of the laws. This is predicated upon the difference in the act (and its predecessors) in the manner of designating conservation and slum areas relative to hearings. It is argued that when property is to be taken for a conservation project, every property owner "shall" have the opportunity to be heard before condemnation proceedings may be instituted (pars. 91.120 and 91.121), but that where the area is designated slum and blighted the Department "may" hold public hearings. (Par.

91.109.) We are here dealing with a slum and blighted area, not a conservation area, and the issue of a prior right to a hearing before designation of an area as a conservation area is not before us. Nor does the difference in the two designations warrant a holding that equal protection is denied under certain of our previous decisions hereinafter discussed.

The hearings contemplated by the several acts are legislative in nature, not trial or adversary as contended. The legislative determination that an area is slum and blighted is not an adjudication of legal rights, nor does it constitute the taking of property. The cases of *Zurn* v. *City of Chicago*, 389 Ill. 114, and *Ross* v. *Chicago Land Clearance Com.* 413 Ill. 377, recognized that a property owner may be heard in the condemnation proceeding on the question of whether all conditions precedent to the exercise of eminent domain have been met, and that due process is thereby satisfied.

Defendants frankly admit that if the doctrine of the *Zurn* and *Ross* cases is followed, their appeal with respect to procedures prior to the filing of condemnation actions will be of little avail. They earnestly request that we overrule those cases, since they govern if not overruled. After a careful review of the *Zurn* and *Ross* cases, together with cases subsequently decided in this field, (see *e.g. Chicago Housing Authority* v. *Lamar*, 21 Ill.2d 362,) we are of the opinion that they are correct and they will not be disturbed.

Defendants do not question the power to eliminate slums through exercise of the right of eminent domain, nor do they claim that slum clearance is not a public use. This would seem to leave only the questions of whether areas so designated were in fact slum and blighted, and the right of the judiciary to review the slum and blighted designation by the public authorities. Nevertheless, a number of extraneous issues are raised in defendants' 196-page brief. Examples follow.

Many of the arguments are based upon defendants' claim of right to review redevelopment of the area, and defendants seek to question the motives of the authorities. in designating the areas as slums. It has been recognized that the purpose for which the power of eminent domain is exercised may be questioned, but in the absence of a clear abuse of the power, the motives that prompt the taking are not the subject of judicial investigation. (*Tedens* v. *Sanitary Dist.* 149 Ill. 87; *City of Chicago* v. *Vaccarro*, 408 Ill. 587; *Deerfield Park Dist.* v. *Progress Development Corp.* 22 Ill.2d 132.) We find no such abuse in this record as would justify an inquiry into motives.

That the public purpose of acquiring land in a slum clearance area is for the clearance of the slum has been recognized many times by this court, and is conceded by defendants. Land clearance satisfies public use, so that the type of redevelopment of a slum area has no relevance in a condemnation proceeding. This case is similar to *Chicago Land Clearance Com.* v. *White,* 411 Ill. 310. There, a contract for resale of the slum area had been entered into with the New York Life Insurance Company for its private use, while here the contemplated resale is to the University of Illinois for a Chicago campus. In each case the purpose was to clear a slum area, and consequently inquiry into redevelopment was properly refused.

Defendants attempt to inject noncompliance with the Federal Housing Act of 1949 (42 U.S.C., secs. 1441-1462) into this eminent domain proceeding, because the project is being financed in part by Federal subsidy and the terms of the subsidy contract have not been met. A condemnee has no legal interest in the source of a condemnor's funds. (*Chicago Burlington and Quincy R.R. Co.* v. *City of Naperville,* 169 Ill. 25; *City of Chicago* v. *Sanitary Dist.* 272 Ill. 37.) Defendants say that they are not proceeding on that theory, but under a claim that they are third party beneficiaries of the contract between the United States

Government and the Chicago Land Clearance Commission, and that they are entitled to be heard in the State courts on the question, since the public agency is violating the law in its operations. A number of persons, including most of these defendants, made similar contentions in the Federal District Court for the Northern District of Illinois shortly after these actions were filed. The complaint was dismissed and the Court of Appeals affirmed. (*Harrison-Halsted Community Group, Inc.* v. *Housing & Home Finance Agency,* (7th cir.) 310 F.2d 99.) While the suit was dismissed for want of a substantial Federal question, the court went on to say that the act did not confer any legal rights upon owners and residents in a slum clearance area, "separate from their positions as members of the general public". That view seems eminently correct, and it is adopted as the view of this court. Furthermore, the question sought to be raised is not a proper issue in a condemnation action.

We now turn to the question of whether the Roosevelt-Blue Island tract was in fact a slum and blighted area. Section 3(j) of the Blighted Areas Redevelopment Act, (Ill. Rev. Stat. 1961, chap. 67½, par. 65(j),) and section 3(i) of the Urban Renewal Consolidation Act (Ill. Rev. Stat. 1961, chap. 67½, par. 91.103(i),) contain the following identical definitions: " 'Slum and Blighted Area' means any area of not less in the aggregate than two (2) acres located within the territorial limits of a municipality where buildings or improvements, by reasons of dilapidation, obsolescence, over-crowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or layout or any combination of these facts, are detrimental to the public safety, health, morals or welfare." The trial court heard extensive evidence and affirmatively found the tract to be slum and blighted as of the date of its designation as such.

No useful purpose will be served by detailing the testi-

mony of the witnesses. It is sufficient to say that the evidence amply substantiates the finding of slum and blight. A great many structures suffered from dilapidation, obsolescence and other factors to be considered under the statute. Their average age is 75 years, stove heat is predominant and many lack sanitary facilities. Photographs showing more than one half of the buildings are vivid portrayals of property which is readily recognizable as dilapidated and obsolete. Defendants want the quantum of elements spelled out which must be present to justify the conclusion that an area is slum and blighted. They criticize the trial court for using the word "many" and the phrase "there are present" in connection with structures within the tract in his preliminary findings as being too indefinite. Apparently, they would have the judiciary fix percentage standards or formulae. This we have consistently refused to do. "Specific degrees of deterioration or dilapidation, precise percentages of obsolescence, or mathematical measurements of the extent of overcrowding of residences and of schools and other community facilities which indicate imminent deterioration cannot be stated, for the combinations which will produce the condition at which the legislation is aimed are highly variable." *People ex rel. Gutknecht* v. *City of Chicago,* 3 Ill.2d 539, 548. See also *Department of Public Works and Bldgs.* v. *Lantner,* 413 Ill. 581; *Zisook* v. *Maryland-Drexel Neighborhood Redevelopment Corp.,* 3 Ill.2d 570.

It is asserted that a necessary part of plaintiff's case is not only proof of the existence of the statutory factors (dilapidation, obsolescence and the like), but it must also prove that the public health, safety, morals and welfare have been detrimentally affected thereby. The legislature has specifically declared that the presence of factors enumerated in the statute adversely affect the public health and welfare. As with the "chicken and the egg", we may be uncertain which came first, but we have recognized that slum and

blight walk hand in hand with juvenile delinquency, spread of contagious diseases, crime and immorality. (*People ex rel. Tuohy* v. *Chicago,* 394 Ill. 477; *Cremer* v. *Peoria Housing Authority,* 399 Ill. 579.) We are of the opinion that judicial notice may be taken that a slum and blighted area detrimentally affects the public health and welfare.

Defendants complain of certain rulings of the trial court on the admission and exclusion of evidence. For example, they criticize the trial court for allowing proof of slum and blight only as to the Roosevelt-Blue Island tract, despite the fact that they did not contest that designation for the Harrison-Halsted tract, and neither of the properties involved in this condemnation action are located in the Congress-Racine tract. The court properly ruled that the condition of the latter tract had no relevance to the question of whether the other tracts were slum areas. The only connection is the redevelopment, and we have hereinabove held that redevelopment plans are not an issue. We find no error in the other rulings of the trial court.

The trial court's finding that the Roosevelt-Blue Island tract was slum and blighted was not contrary to the manifest weight of the evidence, and was amply supported by the record. No substantial error was committed, and the judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*