407 F.2d 567
 GOVERNMENT OF GUAM, Plaintiff and Appellee,
v.
Francis L. MOYLAN, Yuk Lan Moylan, and Moylan Motor Company, Inc., Defendants and Appellants.
Francis L. MOYLAN et al., Plaintiffs and Appellants,
v.
Manuel F. L. GUERRERO, Governor of Guam, et al., Defendants and Appellees.
 No. 21823.
 No. 22028.
 United States Court of Appeals Ninth Circuit.
 February 3, 1969.
 
 Finton J. Phelan, Jr. (argued), Agana, Guam, for appellants.
 Olen W. Burnett (argued), Deputy Island Atty., Harold W. Burnett, Atty. Gen., Agana, Guam, for appellees.
 Before CHAMBERS, BARNES and HAMLIN, Circuit Judges.
 CHAMBERS, Circuit Judge:
 
 
 1
 Downtown Agana, Guam, is a fairly flat area near a long crescent shaped harbor. Pre-World War II the old city had just grown with sort of mad shaped lots and twisting streets.
 
 
 2
 By the time in 1944 when the American navy had finished bombarding the city in preparation for landings, little was left standing in the harbor area. Upon retaking the City of Agana and the Island from the Japanese in July-August, 1944, the navy began to administer Guam. A decision was made to straighten out the city lot lines and the streets. This naturally resulted in some abandoned streets and pieces and scraps (fractional parts) of old lots.
 
 
 3
 In evidence is the new map of a portion of downtown Agana which indicates both the new lots and the old lots. The new ones are quite geometric and regular. What official status the new map has, we do not know from the record. But the parties and the district court seem to know where the boundaries are. Thus, we need not worry about the status of the map.
 
 
 4
 Too much planned order could not be accomplished without using some strongarm power to force consolidation of properties. The device of condemnation by the Government of Guam was chosen, apparently contemplating resale to individuals of parcels according to the new map. In No. 21,823, the condemnation suit, some 22 parcels and about two dozen owners were involved.
 
 
 5
 The Moylans own the Moylan Motor Company. During the course of the condemnation, the government dismissed as to the Moylan Tract No. 1. But the condemnation continued to judgment as to three other tracts, the Moylans objecting and defending all of the way. (Apparently the building of the Moylan Motor Company is located on part of the four tracts). No other defendants in No. 21,823 contested the right of the Government of Guam to condemn, and several judgments along the way were entered as to the others. From the final judgment completing the taking of their property, the Moylans appeal.
 
 
 6
 Like many condemnation actions, the Guam condemnation suit proceeded slowly. Apparently getting ahead of himself, the director of land management of the Government of Guam on August 19, 1966, (before the judgment for condemnation) advertised a proposed sale of all or part of the Moylan property subject to the pending condemnation suit. (A declaration of taking had been filed soon after commencement of the action.) The advertising resulted in the prompt filing of an injunction complaint against Governor Guerro and other Guam officials. During the course of that case, the contemporary attempt to sell was abandoned. Thus, the complaint was left as a contention that the public officials "might" sell. Both the injunction and declaratory relief were denied. An appeal followed.
 
 
 7
 We shall discuss first the condemnation appeal and then the injunction-declaratory judgment appeal, both brought by the Moylans.
 
 
 The Condemnation Appeal, No. 21823.
 
 
 8
 The two questions on the condemnation case distill down to whether the purpose here qualifies as a public purpose and whether there was sufficient legislative authorization. We answer both questions in the affirmative.
 
 
 9
 On urban renewal condemnations, usually done with the help of federal renewal funds, the whole scheme is for a public agency to take one man's property away from him and sell it to another. The founding fathers may have never thought of this, but the process has been upheld uniformly by latter-day judicial decision. See People of Puerto Rico v. Eastern Sugar Associates, 1 Cir., 156 F.2d 316, cert. denied 329 U.S. 772, 67 S.Ct. 190, 91 L.Ed. 664; Schneider v. District of Columbia, 117 F.Supp. 705, modified and affirmed, sub nom. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); Cf. Cannata et al. v. City of New York, 11 N.Y.2d 210, 227 N.Y.S.2d 903, 182 N.E.2d 395, appeal dismissed, 371 U.S. 4, 83 S.Ct. 28, 9 L.Ed.2d 48; City of Chicago v. R. Zwick Co., 27 Ill.2d 128, 188 N.E.2d 489, appeal dismissed, 373 U.S. 542, 83 S.Ct. 1538, 10 L.Ed.2d 687; State ex rel. Allerton Parking Corp. v. City of Cleveland, 4 Ohio App.2d 57, 211 N.E.2d 203; Belovsky v. Redevelopment Authority, 357 Pa. 329, 54 A.2d 277; Atwood v. Willacy County Navigation District, Tex., 271 S.W.2d 137; Redevelopment Agency of the City and County of San Francisco v. Hayes, 122 Cal.App.2d 777, 266 P.2d 105, cert. denied, 348 U.S. 897, 75 S.Ct. 214, 99 L.Ed. 705.
 
 
 10
 We simply cannot distinguish the public purpose of establishing order out of chaos in the new Agana from redevelopment public purposes.
 
 
 11
 As to the legislative authority, there was plenty. For the government to take, there must be a legislative authorization and an authorized fund to pay for the taking. The government cannot go around taking if there is no authority and money to pay for the taking. Here there is no question the money was appropriated by the Guam legislature for just such takings as occurred here.
 
 
 12
 As to legislative authorization, Guam has taken care of that point. Section 1239(a) of the Code of Civil Procedure of Guam provides:
 
 
 13
 "* * * If the Legislature enacts and the Governor approves an appropriation of funds for a specified public use, such appropriation shall be deemed to include the authorization for condemnation of private property for such use."
 
 
 14
 Nothing more is needed.
 
 
 15
 There may be a lot of policy reasons against the taking of one man's property to sell to another (and sometimes at a loss to the government) but under all modern federal decisions our hands are tied — if the book on the procedure is followed. See People of Puerto Rico v. Eastern Sugar Associates, supra; Schneider v. District of Columbia, supra.
 
 
 The Injunction-Declaratory Judgment Case, No. 22,028.
 
 
 16
 The public officials won the injunction-declaratory judgment case apparently on the basis of calling off the sale. The district court held no sale was presently threatened, therefore, no reason to further consider an injunction. This was clearly right on the injunction phase.
 
 
 17
 But we cannot see that the issue of a declaratory judgment was met. If there is really a serious legal question as to how (what method) the property should be sold, we think that a government which is taking a man's property for resale (and the man wants to reacquire it) ought to let him have a determination as to the correct method before sale, if there is doubt. Of course, we are fully aware that federal courts are not under the same compulsion to take and determine declaratory actions as some state courts are. The word "may" means something in the federal statute. Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291; Sani-Top, Inc. v. North American Aviation, Inc., 9th Cir., 261 F.2d 342 (1958). Still there are good and bad reasons for declining to give a declaratory judgment. Certainly the Moylans are in a stronger position to ask for a declaratory judgment than a man who arrives on a ship or at the airport in Agana and goes to the governor's office and says, "I want to buy Mr. Moylan's property that you took away from him yesterday."
 
 
 18
 The case has not been adequately briefed here to consider what is the correct procedure to hold a sale. Neither was it adequately presented by either side to the district court on the issue of declaratory judgment, the emphasis being on an injunction.[1] Therefore, we shall remand No. 22,028, with the suggestion (and authorization) that the findings and judgment be vacated and the parties be permitted to tidy up their pleadings insofar as an issue for declaratory judgment on the right way to sell is concerned.[2]
 
 
 19
 There may be some ready reason, not apparent in the record, why this is not a case for a declaratory judgment. But from our limited view, restricted as it is by the pleadings, we have trouble seeing why the Government of Guam would want to oppose there being an adjudication on the right way to sell the land.[3] It clearly has its views on the correct way.
 
 
 20
 The condemnation judgment (No. 21,823) is affirmed and the injunction-declaratory judgment (No. 22,028) is remanded to the district court for consideration of whether a declaratory judgment would be appropriate on the issue of "how to sell." If it thinks one is appropriate, it should resolve the issue.
 
 
 21
 An appeal by either party on the new determination might be expedited if a party moved for it.
 
 
 
 Notes:
 
 
 [1]
 The government here simply moved to dismiss for failure to state a claim. The court was disturbed by the "shotgun" complaint. It granted the motion
 
 
 [2]
 The Supreme Court has declared that when such a case is taken the issue of declaratory judgment must be decided independently of any injunction issue in the same case. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444
 
 
 [3]
 The present complaint charges that the government has no right to combine smaller lots into larger areas for sale and its contends that the government code requires purchasers of government land to pay 20% and the balance over six years at 6%