**Frederika BLANKNER, Plaintiff-Appellant,**

**v.**

**The CITY OF CHICAGO et al., Defendants-Appellees.**

**No. 73-1568-9.**

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1974.

Decided Oct. 24, 1974.

Rehearing and Rehearing En Banc Denied Nov. 21, 1974.

Swygert, Chief Judge, concurred in part and dissented in part and filed an opinion.

David S. Kreisman, Thomas J. Grippando, Thomas J. Boodell, Jr., Lawrence M. Gavin, Chicago, Ill., for plaintiff-appellant.

James R. Thompson, U. S. Atty., and Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., Robert E. Kopp, Anthony J. Steinmeyer, Dept. of Justice, Washington, D. C., Jerrald B. Abrams, Asst. Atty. Gen., William J. Scott, Atty. Gen., Richard F. Babcock and Frederic O. Floberg, Richard L. Curry, Corp. Counsel and Daniel Pascale, Asst. Corp. Counsel, William R. Dillon, Herbert Morton, John O. Snook, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In her complaint, plaintiff alleged that defendants conspired fraudulently to deprive her of her property without due process of law, thus contravening the Civil Rights Act. As a class representative, she also challenged the constitutionality of the Illinois Urban Renewal Consolidation Act of 1961 (Ill.Rev.Stats. 1973, ch. 67½, § 91.101 et seq.) and requested the convening of a three-judge court to decide that question. The district judge refused to convene a three-judge court, and the defendants' motions to dismiss the complaint were subsequently granted pursuant to an extensive, unreported memorandum opinion. Thereafter, a motion for leave to file an amended complaint and for reconsideration was denied. We affirm.

The verified complaint was in four counts. The first count showed that plaintiff was the owner of an apartment house at 6043 South Woodlawn Avenue in Chicago. The building is presently occupied by plaintiff and her tenants It is located in the 66-acre South Campus portion of a 105.6-acre Urban Renewal Area and is immediately adjacent to the south end of the University of Chicago. Count I alleged a conspiracy between the University of Chicago and the Department of Urban Renewal of the City of Chicago. The University allegedly desired to acquire property south of its campus, while the City wished to receive credits under Section of 112 of the 1949 National Housing Act (42 U.S. C. § 1463). Both goals could be accomplished if the University purchased urban renewal land from the municipality. The City's credits could then be used to finance unrelated renewal projects in other areas of the City.

Plaintiff charged that pursuant to this conspiracy, defendants falsely caused the Urban Renewal Area to be declared a slum and blighted area and acquired it by purchase and condemnation. The condemnation was allegedly effected by unfair procedures. The University purchased the South Campus at a below market price while the City acquired $14,000,000 of urban renewal credits.

The City applied for $12,000,000 in funds from the federal government in 1965 to defray the cost of acquiring this Urban Renewal Area property. It is accused of making false and inaccurate claims in this application that buildings, including plaintiff's, were slum and blighted. In 1967, the City began to purchase parcels within this Urban Renewal Area and later brought condemnation proceedings in the Circuit Court of Cook County to acquire additional parcels there. Plaintiff was named a defendant in a condemnation suit after refusing to sell her property to the City. In that litigation, she denied that the area was slum and blighted, that the

City had a right to take it, and that the taking was for a public purpose. Judgment was entered for the City after a jury trial, resulting in a $40,750 award for Miss Blankner. She lost her appeal in the Supreme Court of Illinois (50 Ill. 2d 69, 277 N.E.2d 129 (1971)), and her petition for certiorari was subsequently denied. 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed.2d 343. The condemnation of plaintiff's apartment house was allegedly obtained through false and fraudulent information supplied by the City, thus causing plaintiff's property to be appropriated for a private purpose.

In Count I, plaintiff requested declaratory and injunctive relief, including the invalidation of the condemnation judgment of the Circuit Court of Cook County. She also requested $250,000 in compensatory damages and $250,000 in punitive damages, plus attorney's fees.

Count II was brought as a class action. The members of the class were described as "all property owners of the State of Illinois who are subject to having their property condemned for the purposes of urban renewal, without being afforded a fair hearing." The gravamen of Count II was that the Illinois Urban Renewal Consolidation Act, as interpreted by the Illinois courts, violated the equal protection and due process clauses of the Fourteenth Amendment. In Count II, plaintiff alleged that neither she nor any other property owner in this Urban Renewal Area (except the University of Chicago) was given notice or an opportunity for a hearing until after an October 8, 1964, Resolution of the Chicago Department of Urban Renewal concerning this area and the City Council's November 16, 1964, ordinance adopting that resolution and approving the acquisition of this Urban Renewal Area pursuant to the Illinois Act. Plaintiff claimed that the Act unconstitutionally allowed the City of Chicago to establish the fact of slum and blight by the introduction of the resolution and ordinance. This count also alleges that the definition of "slum and blighted area" (§ 91.103(i)) is imper-

missibly vague, and that the Department of Urban Renewal is permitted to determine whether an area is slum and blighted despite its own pecuniary interest in the outcome.

Count III was also brought as a class action and noted that unlike "conservation area" property owners, property owners living in a purported slum and blighted area are not afforded notice and a public hearing before their area can be designated for a renewal project. This was alleged to violate the equal protection clause.

Count IV, also a class action count, asserted that the condemnation procedure adopted under the Act constituted a bill of attainder.

Under the last three counts, the plaintiff and the class requested the convening of a three-judge district court, a judicial determination permitting the action to proceed as a class action, a declaration that the Illinois Urban Renewal Consolidation Act violates the federal Constitution, and an injunction against the taking of property under the slum and blighted area provisions of the statute.

*Conspiracy Count*

The district court held that the questions of law presented by the conspiracy count's allegation of unfair condemnation procedures were resolved against plaintiff in the state court proceedings. As more fully explained in the discussion of Count II, we agree.

Count I also alleged that defendants falsely and fraudulently caused the area in question to be designated a slum and blighted area. The fraud allegations are not merely conclusory; plaintiff alleges facts which suggest she would have had a strong case had she attempted to prove it in the state condemnation proceeding. Inexplicably, she declined to present any evidence there, so that this claim is also barred.

An essential element of plaintiff's fraud claim is that this Urban Renewal Area was not slum and blighted. If it were in fact slum and blighted, the

defendants' motives in designating it for renewal would be irrelevant. Green Street Assn. v. Daley, 373 F.2d 1, 6 (7th Cir. 1967), certiorari denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995. Similarly, the conclusions of the report relied on by the condemnation court would be true, and the renewal project could proceed despite any fraudulent supporting statements. Plaintiff had an opportunity to litigate the slum and blight issue in the condemnation proceeding, but she deliberately bypassed it. See City of Chicago v. Walker, 50 Ill.2d 69, 70–71, 277 N.E.2d 129 (1971); City of Chicago v. Barnes, 30 Ill.2d 255, 257–258, 195 N.E.2d 629 (1964); City of Chicago v. Zwick, 27 Ill.2d 128, 188 N.E.2d 489 (1963); Ross v. Chicago Land Clearance Comm'n, 413 Ill. 377, 380–381, 108 N.E.2d 776 (1952); Zurn v. City of Chicago, 389 Ill. 114, 129–133, 59 N.E.2d 18 (1945); cf. Deerfield Park Dist. v. Progress Development Corp., 22 Ill.2d 132, 138–141, 174 N.E.2d 850 (1961).

■ If that proceeding were infected by fraud, plaintiff may or may not have a remedy. It is clear, however that any remedy lies not in federal court, but in a state court petition for relief from judgment under Ill.Rev.Stats.1973, ch. 110, § 72.

Plaintiff also argues that the fraud was only revealed by newly discovered evidence. That claim is also properly raised, if at all, in a state court petition under § 72. We note, however, that the fraud charges were based in part upon separate studies of the South Campus area, published in 1962 and 1964. Parts of each study are attached to the complaint as Exhibits B and C respectively. The complaint also relies on an article by Julian Levi which appears to have been published in 1962, although that is not clear from the record, and on a map attached to the City's federal grant application in 1965. These items were complaint Exhibits A and D. At the very least, Exhibits B and C were public and could have been presented at the 1968 condemnation trial.

■ Also, in the condemnation proceeding, plaintiff had the opportunity to prove that her property was being taken for a private purpose but did not attempt to do so. This issue was raised by *amici curiae*, and the Illinois Supreme Court reiterated that the taking of land for the redevelopment of slum and blighted areas was for a public purpose. 50 Ill.2d at 71, 277 N.E.2d 129. Thus relitigation of this ground is barred too.

■■ In this Count, plaintiff additionally asserts that the two federal defendant officials had an obligation to inspect the Urban Renewal Area before making federal funds available to Chicago and its Department of Urban Renewal. However, 42 U.S.C. §§ 1451(c) and (e) and 1460(c), the provisions relied upon, placed no such duty upon the federal defendants. In any event, since the condemnation proceedings finally determined whether this Urban Renewal Area was a slum and blighted area, the doctrine of collateral estoppel bars plaintiff's claim against the federal defendants.

Plaintiff relies on Kauffman v. Moss, 420 F.2d 1270 (3d Cir. 1970), for the proposition that collateral estoppel does not bar a civil rights suit alleging that false evidence was introduced in a state trial. Kauffman alleged that his criminal conviction had been procured by the perjury of policemen who testified against him. The case would not be directly in point, for it is much easier to attack collaterally a criminal conviction than a civil judgment, as the law of habeas corpus makes clear. But see Goss v. Illinois, 312 F.2d 257 (7th Cir. 1963); Thistlethwaite v. City of New York, 497 F.2d 339 (2d Cir. 1974). Equally important, the court in *Kauffman* stated that the complaint would be barred by collateral estoppel if the veracity of the witnesses named as defendants had been clearly put in issue and decided at the criminal trial; it held only that it was impossible to determine this issue on motion to dismiss. 420 F.2d at 1274–1275. Accord, Mastracchio v. Ricci, 498

F.2d 1257 (1st Cir. 1974); cf. Travelers Indemnity Co. v. Walburn, 378 F.Supp. 860, (D.D.C.1974); Lovely v. Laliberte, 498 F.2d 1261, (1st Cir. 1974).

*Arguable Exceptions to Collateral Estoppel*

■ Plaintiff argues that even if she is technically barred by prior litigation, the public interest requires that her case be decided on the merits. See Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 669–672, 64 S.Ct. 268, 88 L.Ed. 376; Gold v. DiCarlo, 235 F.Supp. 817, 820 (S.D.N.Y.1964), affirmed, 380 U.S. 520, 85 S.Ct. 1332, 14 L.Ed.2d 266; Spilker v. Hankin, 88 U.S.App.D.C. 206, 188 F.2d 35 (1951). Each of these cases involved unusual facts not present here; together, they indicate a narrow exception to a generally applicable doctrine. In this case, the public interest requires that collateral estoppel be given its full scope.

As Judge Swygert observed in Green Street Assn. v. Daley, 373 F.2d 1, 6–7 (7th Cir. 1967), certiorari denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995, "the subjective reasons of the legislative authority seeking the acquisition is an 'inappropriate area for judicial inquiry.'" He added, quoting Baber v. Texas Utilities Co., 228 F.2d 665, 666 (5th Cir. 1956), "the state courts are as firmly bound by the Constitution of the United States as is this [federal] Court and [the proper] forum for the enforcement of any constitutional rights that may have been violated is in the * * * state courts with the right of ultimate determination by the Supreme Court of the United States." (Modifications in *Green Street*.) We adhere to the rule in *Green Street* that cases like this presenting challenges to urban renewal programs are to be decided in the state court condemnation proceedings "if the taking is ostensibly for a public purpose, even though violations of federally guaranteed rights are claimed." See also Harrison-Halsted Community Group, Inc. v. Housing & Home Finance Agency, 310 F.2d 99, 103, 106 (7th Cir.

1962), certiorari denied 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 414.

*Counts Attacking Constitutionality of Illinois Urban Renewal Act*

■ As already noted, Counts II–IV attack the constitutionality of the Illinois Urban Renewal Consolidation Act of 1961. These issues were litigated or could have been litigated in the state court, the proper forum. See City of Chicago v. Walker, 50 Ill.2d 69, 71, 277 N.E.2d 129 (1971); City of Chicago v. Barnes, 30 Ill.2d 255, 257, 195 N.E.2d 629 (1964); City of Chicago v. Zwick, 27 Ill.2d 128, 130–131, 188 N.E.2d 489 (1963); Chicago Land Clearance Comm'n v. Quinn, 11 Ill.2d 111, 113, 142 N.E.2d 60 (1957); Ross v. Chicago Land Clearance Comm'n, 413 Ill. 377, 380, 108 N.E.2d 776 (1952); Zurn v. City of Chicago, 389 Ill. 114, 129–133, 59 N.E.2d 18 (1945). Therefore, the doctrine of res judicata bars plaintiff from raising the unconstitutionality of the Act against the same defendants or those in privity with them. Grubb v. Public Utilities Commission, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972. As to the other defendants, plaintiff is barred by the related doctrine of collateral estoppel.

Foster v. City of Detroit, Michigan, 405 F.2d 138 (6th Cir. 1968), does not help plaintiff. There the Fosters were awarded $5,200 for their land in a condemnation suit begun after the federal suit was pending. The $5,200 did not purport to compensate for the deterioration in value caused by the ten-year pendency of an ultimately discontinued previous condemnation suit. No comparable separable issue has been raised in this case.

■ One other case relied on by plaintiff and deserving mention is Starks v. Klopfer, 468 F.2d 796 (7th Cir. 1972). There the Court ordered that plaintiffs' challenge to an Illinois statute be heard by a three-judge district court. The parties had previously litigated the constitutionality of the same statute in the state court, but

while the federal appeal was pending, the state Supreme Court withdrew its opinion and again took the case under advisement. The cases are divided as to whether a judgment has *res judicata* effect despite the pendency of a direct appeal, but we need not decide that question to distinguish *Starks*. *Res judicata* and estoppel are affirmative defenses which must be specifically raised. The defendant in *Starks* filed no brief in this Court, and the opinion did not refer to *res judicata* or collateral estoppel. We think it clear that the question was not presented to the Court and that it was not decided. Cf. Edelman v. Jordan, 415 U.S. 651, 670–671, 94 S.Ct. 1347, 39 L.Ed.2d 662.

■ As noted, Counts II–IV were brought as a class action on behalf of "all property owners" subject to having their property condemned under the Illinois Urban Renewal Consolidation Act. We may assume *arguendo* that plaintiff's membership in the class she purports to represent has not been terminated by the condemnation judgment. Even so, it is clear that most members of the class of property owners described have not already fully litigated a condemnation proceeding in the state courts. Since the *res judicata* and collateral estoppel issues which have dominated this litigation are unique to Miss Blankner, she is not a proper class representative. See Koos v. First Nat'l Bank of Peoria, 496 F.2d 1162, 1164–1165 (7th Cir. 1974).

*Failure to Convene Three-Judge Court*

■ The district judge refused to request the convening of a three-judge court to consider the merits of Counts II–IV. Noting that the Urban Renewal Consolidation Act applies only to Illinois "urban communities * * * with more than 500,000 inhabitants * * *," and thus only to the City of Chicago, he held a three-judge court to be improper under Board of Regents v. New Left Education Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697, and Moody v. Flow-

ers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed. 2d 643. This disposition was correct, and we disagree with the contrary language in Williams v. Osser, 326 F.Supp. 1139, 1140–1141 (E.D.Pa.1971). We of course have no occasion to pass on the alternative rationale in that case that the statute affected statewide elections.

We have considered the other points raised by plaintiff and the *amici curiae* and deem them without merit.

Judgment affirmed.

SWYGERT, Chief Judge, concurring in part and dissenting in part.

The key point in the majority opinion is that there was a determination by the state court that the urban renewal area was slum and blighted; that the plaintiff had an opportunity to litigate this issue but deliberately bypassed it. It cannot be denied that if the area was not slum and blighted, the taking of plaintiff's property was for a private and not a public use. "The taking by a state of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the fourteenth article of amendment of the constitution of the United States." Missouri Pacific Railway v. Nebraska, 164 U.S. 403, 417, 17 S.Ct. 130, 135, 41 L.Ed. 489 (1896).

At the condemnation trial, the only evidence offered to show that the land was slum and blighted were the resolution of the Department of Urban Renewal and the ordinance of the City Council. Both referred to the condition of the land and buildings in late 1964.

Miss Blankner never received notice that her property was being taken for urban renewal until she received a letter in October 1967 from the city offering to purchase her property. It was another year before she had an opportunity to challenge the taking. By that time over four years had elapsed. She contends that the Department of Urban Renewal's designation of the land and buildings in

the area as slum and blighted was a self-fulfilling prophecy. She makes the argument that as the city purchases property pursuant to the urban renewal plan, buildings become vacant and fall into a state of disrepair. The owners do not improve or even maintain their property in the face of imminent condemnation. No new construction is begun. Although an area may not have been slum and blighted at the time of the original designation, it becomes slum and blighted by the time of the condemnation proceedings. The federal defendants concede this point in their brief when they state that "once a renewal plan is announced for an area, improvement and maintenance of property within the area usually cease almost completely and the area deteriorates."

"The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.' Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 596–597, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931)." Mitchell v. Grant, 416 U.S. 600, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974). But here the postponement of that opportunity made the determination of liability inadequate. This was not the usual condemnation case where it can be determined after a public project is formulated whether the taking was proper. In the instant case the public purpose for which the land was taken—the elimination of a slum and blighted area—could never be tested in the condemnation action as the Due Process Clause requires since the adoption of the resolution and the ordinance foreclosed any later meaningful challenge.

Even if a challenge to the taking were permissible in the state condemnation proceeding, Miss Blankner could not have presented evidence of the condition of the area at the time it was determined to be slum and blighted since she alleges that the area had deteriorated by the time of the trial. Moreover, it would be unfair to place the burden on her to show the condition of two hundred sixty-six buildings over four years prior to the trial and three years prior to notice from the city that the area had been designated as slum and blighted and was to be condemned under urban renewal. The Fourteenth Amendment guarantees that a person shall not be deprived of property without due process of law.

"[T]he Constitution does require . . . 'an *opportunity* . . . granted at a meaningful time and in a meaningful manner.' Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (emphasis added), 'for [a] hearing appropriate to the nature of the case,' Mullane v. Central Hanover Tr. Co., *supra*, 339 U.S. 306, at 313, 70 S.Ct. 652 at 657, 94 L.Ed. 865. The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. In short, 'within the limits of practicability,' *Id.*, 339 U.S. at 318, 70 S.Ct. 652, at 659, a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause." Boddie v. Connecticut, 401 U.S. 371, 378–379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1970).

The purported opportunity afforded Miss Blankner to litigate the propriety of the taking of her land in the state

court was merely a mirage; the opportunity disappeared before she was ever required to respond in the condemnation proceeding. Since she was not afforded a meaningful opportunity to contest the designation and taking, she has a right of action under 42 U.S.C. § 1983 for deprivation of her property without due process of law.

The plaintiff alleges that beginning in 1959 and continuing to the present the defendants conspired under color of law to deprive her and others of their property without due process. She asserts that the area in question was characterized by the defendants fraudulently and falsely as slum and blighted and that their concerted conspiratorial action denied her and the other owners of their constitutional right to due process. These allegations constitute a classic section 1983 cause of action. In my judgment there was no way that her asserted claim could have been incorporated in the condemnation proceeding. I would reverse the dismissal of Count I except as to the federal defendants.

For the reasons stated, I would also reverse Count II and remand with directions that a three-judge court be convened to decide whether the judicial review provided by the Illinois Consolidated Urban Renewal Act violates the Due Process Clause in that it fails to provide notice and a meaningful hearing in which to challenge the determination that the land is slum and blighted. Since I would reverse the dismissal of Count II as not being barred by res judicata, I would allow that part of the case to proceed as a class action except as to the federal defendants who I agree should be dismissed.

I concur in the affirmance of the dismissal of Count III since there was no suspect class alleged (*see* Goldstein v. City of Chicago, 504 F.2d 989 (7th Cir. 1974)).

I also concur in the affirmance of Count IV.