**Gregory A. AHRENSFELD and Mariluann H. Ahrensfeld, his wife, et al., Plaintiffs-Appellants,**

**v.**

**Donald STEPHENS et al., Defendants-Appellees.**

No. 75–1158.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1975.

Decided Dec. 23, 1975.

William M. Ward, Chicago, Ill., for plaintiffs-appellants.

Robert J. Weber, Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and SWYGERT and TONE, Circuit Judges.

CASTLE, Senior Circuit Judge.

This appeal questions the district court's dismissal of plaintiffs' constitutional attack on a municipality's taking of their property by eminent domain because condemnation proceedings were pending in state court.

## I.

Plaintiffs are property owners in the Village of Rosemont, Illinois, a suburb of Chicago, Illinois. Defendants are the Village of Rosemont and the individual members of its board of trustees. The Village is a unit of local government possessing home rule powers under the constitution and laws of the State of Illinois.

On October 30, 1973, the Village, through its board of trustees and pursuant to article VII of the Illinois Constitution of 1970, adopted Ordinance No. 73–10–30 granting itself eminent domain power as a home rule unit. On that same day, the Village adopted Resolution No. 73–10–30A authorizing it to acquire property by eminent domain for the construction of an athletic and convocation center. The resolution authorized the Village to file condemnation actions in state court to acquire the desired land.

Pursuant to this resolution, the Village instituted condemnation proceedings in state court against various property owners in the Village, including the plaintiffs. While these proceedings were pending, plaintiffs brought this action in federal district court seeking to stop the taking of their property. Plaintiffs brought this action under 42 U.S.C. § 1983 and invoked jurisdiction under 28 U.S.C. §§ 1331 and 1343 requesting injunctive, declaratory and monetary relief. Plaintiffs claim that the Village resolution authorizing the condemnation of their homes violates the fifth and fourteenth amendments of the Constitution in that it permits a taking for a private and not a public purpose.[1] Plaintiffs also maintain that section 9.7 of the Illinois Eminent Domain Act, Ill.Rev. Stat., ch. 47, § 9.7 (1975),[2] is unconstitutional because it prohibits the consideration of the proposed commercial use of the acquired property in computing "just" compensation. Plaintiffs seek to have the resolution and section 9.7 declared unconstitutional and the Village enjoined from continuing the state court condemnation proceedings under the authority of the resolution.[3]

---

1. In their federal complaint, plaintiffs also attack the resolution as violative of the fifth and fourteenth amendments because it permits the taking of residentially-zoned property for a commercial use. The ordinance was also attacked for lacking "sufficiently definite standards by which the proposed commercial uses are to be operated and managed in the public interest." *See* note 7 *infra.*

2. That section reads:

    Except as to property designated as possessing a special use, the fair cash market value of property in a proceeding in eminent domain shall be the amount of money which a purchaser, willing but not obligated to buy the property, would pay to an owner willing but not obligated to sell in a voluntary sale, which such amount of money shall be determined and ascertained as of the date of filing the petition to condemn. Provided, that in the condemnation of property for a public improvement there shall be excluded from such amount of money any appreciation in value proximately caused by such improve-

ment, and any depreciation in value proximately, caused by such improvement. Provided further, that such appreciation or depreciation shall not be excluded where property is condemned for a separate project conceived independently of and subsequent to the original project.

    Ill.Rev.Stat., ch. 47, § 9.7.

3. Plaintiffs' federal complaint asked the district court to, inter alia:

    Issue a permanent and final injunction restraining the Defendants, and each of them, and their officers, agents, servants and representatives from enforcing or attempting to enforce the ordinance or ordinances authorizing the condemnation of Plaintiffs' real property.

    Since all the parties to the federal action were at that time parties to the pending state court condemnation proceedings, plaintiffs were in effect seeking to enjoin the state proceedings by the relief sought in federal court. Our decision, however, is not premised on the seeking of injunctive relief; the seeking of declaratory

Upon motion of the defendants, the district court dismissed the action against the Village on grounds that a municipality is not a "person" under 42 U.S.C. § 1983 [4] and against the trustees for reasons of comity. The district court opined that "[a] civil rights action . . . is not appropriate . . . in an eminent domain controversy when there is ongoing litigation in State Court where the Plaintiffs' constitutional claims can be fully and fairly heard." *District Court's Memorandum Decision and Order* at 2. From this order of dismissal, plaintiffs appeal. We affirm.

## II.

■ Ordinarily, when a litigant properly invokes one of the statutory grants of federal jurisdiction, a federal district court must assume and exercise jurisdiction over the litigant's claims. *FSLIC v. Krueger,* 435 F.2d 633, 637 (7th Cir. 1970). Under certain circumstances, however, a federal district court is nevertheless precluded from doing so. One such instance is where the litigant requests the federal court to enjoin proceedings in state court. An Act of Congress, 28 U.S.C. § 2283, provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The Supreme Court in *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), held that 42 U.S.C. § 1983 constitutes an "expressly authorized" exception under section 2283. Therefore plaintiffs' section 1983 action is not barred by the anti-injunction statute. The Court in *Mitchum,* however,

was careful to point out that while section 1983 may be an "expressly authorized" exception to section 2283:

> "we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state proceeding." [407 U.S. at 243, 92 S.Ct. at 2162.]

A year earlier, the Court described these "principles of equity, comity and federalism" in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Court explained that the "longstanding public policy against federal court interference with state court proceedings" found its "primary sources" in these principles. *Id.* at 43, 91 S.Ct. at 750. Comity, the Court stated, embodies:

> "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." [*Id.* at 44, 91 S.Ct. at 750.]

Federalism, the Court noted, represents:

> "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." [*Id.*]

■ These principles of equity, comity, and federalism lie at the heart of the judge-made doctrine of abstention first

---

relief is sufficient interference with the state court proceedings to warrant the district court's staying its hand. *See* note 6 *infra.*

Since plaintiffs sought only a declaratory judgment concerning section 9.7 of the Illinois Eminent Domain Act and not an injunction, the convening of a three-judge court under 28 U.S.C. § 2281 was not required. *See Steffel v. Thompson,* 415 U.S. 452, 457 n. 7, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

4. The district court further found that plaintiffs had failed to allege the requisite $10,-000.00 in controversy in order to invoke the court's jurisdiction over the Village under 28 U.S.C. § 1331. The court denied the plaintiffs' request for leave to amend their complaint to allege the requisite amount in controversy.

fashioned in *Railroad Commission v. Pullman Company,* 312 U.S. 496 (1941) and later broadened in *Younger v. Harris, supra,* and its progeny. The question of when the doctrine of abstention should be invoked is a matter of discretion, *Harman v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965), which must be approached on a case-by-case basis and not as a matter of the application of a general rule. *Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). The abstention doctrine allows a federal court to decline properly invoked jurisdiction because the rights asserted before it may be adjudicated in some other forum, but only, however, in narrowly limited "special circumstances." *Propper v. Clark,* 337 U.S. 472, 492, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949); *see generally* Pell, *Abstention—a Primrose Path by Any Other Name,* 21 DePaul L.Rev. 926 (1972). One of these special circumstances is the existence of pending state court proceedings in which the federal claims before the federal court can be properly adjudicated. *Lynch v. Snepp,* 472 F.2d 769 (4th Cir. 1973). Another is the susceptibility of a state statute attacked in federal court on constitutional grounds to a construction by a state court that would avoid or modify the constitutional questions. *Harrison v. NAACP,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). We are of the opinion that both of these "special circumstances" exist in the present case.

### A.

■ Central to the concerns prevalent in the principles of equity, comity, and federalism is the strong desire to avoid unnecessary interference and conflict with the sovereignty of the states.[5] A logical corollary of this is that a federal court should refrain from interfering in ongoing state proceedings.[6] *See Glen Oaks Utilities, Inc. v. City of Houston,* 280 F.2d 330 (5th Cir. 1960). Until recently, this concern has manifested itself most notably in situations where a federal court has been asked to interfere in pending state criminal proceedings. However, as noted by the Supreme Court in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), several courts, including this court, have ordered abstention when the pending state proceedings were civil in nature. *See Puerto Rico International Airlines, Inc. v. Silva Recio,* 520 F.2d 1342 (1st Cir. 1975); *Duke v. Texas,* 477 F.2d 244 (5th Cir. 1973); *Lynch v. Snepp,* 472 F.2d 769 (4th Cir. 1973); *Cousins v. Wigoda,* 463 F.2d 603 (7th Cir. 1972); *Hamar Theatres, Inc. v. Cryan,* 393 F.Supp. 34 (D.N.J.1975) (three-judge court). These cases indicate to us that the application of the "principles of equity, comity, and federalism" is not limited solely to the pending state criminal proceeding situation, but may also call for abstention where the pending state proceeding is civil. *Cf. Cleaver v. Wilcox,* 499 F.2d 940 (9th Cir. 1974).

---

**5.** This concern toward avoiding interference with another sovereign cuts both ways. The Supreme Court has held that state courts may not interfere with the sovereignty of the federal government in various contexts. *See* Redish & Woods, *Congressional Power to Control the Jurisdiction of Lower Federal Courts: A Critical Review and a New Synthesis,* 124 U.Pa.L.Rev. 45, 81–93 (1975).

**6.** "Interference" encompasses more than one court's *enjoining* the proceedings of another court. Nearly all of the cases in this area involve declaratory as well as injunctive relief. Declaratory relief has been generally regarded as to be as objectionable in this context as injunctive relief. *See* 1A Moore's Federal Practice, ¶ 0.220, at 2603:

"In the exercise of discretion a federal court should normally deny a declaratory judgment where the issues raised may be fully adjudicated in a suit pending in a state court at the time the federal declaratory judgment action is instituted."

*See also Jones v. Steiner,* 481 F.2d 392 (5th Cir. 1973); *Fay v. Fitzgerald,* 478 F.2d 181 (2d Cir. 1972); *Miller v. Miller,* 423 F.2d 145 (10th Cir. 1970). In *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the Supreme Court held that the "principles of equity, comity, and federalism" precluded a federal court from issuing a declaratory judgment on the constitutionality of a state statute pursuant to which a criminal prosecution was pending.

■ The discretion possessed by the district courts to interfere with state court proceedings "should be exercised in the light of the historical reluctance of federal courts to interfere with state judicial proceedings." *Southern California Petroleum Corp. v. Harper,* 273 F.2d 715, 718 (5th Cir. 1960). And the Supreme Court has admonished federal courts that "interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart v. Excess Insurance Company,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942).

■ This respect and concern arises clearly in relation to a state's eminent domain system. In *Louisiana Power & Light Company v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), the Supreme Court noted the "sensitive nature" of federal court intervention in a state's eminent domain system, remarking that eminent domain was "intimately involved with state prerogative." *Id.* at 28–29, 79 S.Ct. 1070. Several federal courts have opined that state eminent domain proceedings should not be interfered with by federal courts because their local nature makes interference unwise. In *Creel v. City of Atlanta,* 399 F.2d 777 (5th Cir. 1968), the court ordered the district court to abstain and not interfere in pending state court condemnation proceedings, stating:

> "[T]he principal and essential issue is one properly for determination by the state courts. Not only is municipal eminent domain ordinarily a local matter, but it is difficult to imagine a situation where more confusion would arise than would be the case if the parties here were allowed to simultaneously pursue both this action and the state condemnation proceeding. [*Id.* at 779.]

Accord, *Georgia v. City of Chattanooga,* 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 796 (1923); *Harrison-Halsted Community Group v. Housing and Home Finance Agency,* 310 F.2d 99, 103 (7th Cir. 1962); *Green Street Association v. Daley,* 373 F.2d 1, 6 (7th Cir. 1967); *Elterich v. City of Sea Isle City,* 477 F.2d 289 (3d Cir. 1973); *Muskegon Theatres, Inc. v. City of Muskegon,* 507 F.2d 199 (6th Cir. 1974).[7]

■ The fact that plaintiffs here raise federal constitutional claims against the Illinois eminent domain system does not preclude abstention. The Supreme Court in *Mitchum v. Foster, supra,* noted that section 1983, while an exception to the ban of section 2283, did not necessarily mandate the exercise of federal jurisdiction where the principles of equity, comity and federalism dictated otherwise. And the Court has approved abstention in other cases where federal constitutional claims were before a federal court. *See, e. g., Harrison v. NAACP, supra; Askew v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); *Gibson v. Berryhill,* 411 U.S. 564, 573, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

■ The presence of a federal constitutional claim in the federal court action does not preclude that court's staying its hand because, as this court and others have repeatedly stated in the past, "we must assume that an Illinois court would properly determine the merits of any federal issue properly presented to it." *Cousins v. Wigoda,* 463 F.2d 603, 607 (7th Cir. 1972). *See also Harrison-Halsted Community Group v. Housing and Home Finance Agency, supra,* at 106; *Georgia v. City of Chattanooga, supra,* 264 U.S. at 483–84, 44 S.Ct. 369; *Amalgamated Clothing Workers of America v. Richman Brothers,* 348 U.S. 511, 518, 75 S.Ct. 452, 99 L.Ed. 600 (1955).

**7.** Federal courts have also noted that the application of zoning ordinances and regulations is "distinctly a feature of local government" which is "outside the general supervisory power of federal courts." *Hill v. City of El Paso,* 437 F.2d 352, 357 (5th Cir. 1971). Therefore the district court properly abstained from answering plaintiffs' request that it find that the Village violated its zoning ordinance by taking residentially-zoned property for a commercial use. *See also Jones v. City of Norwalk,* 284 F.2d 522 (6th Cir. 1960).

Illinois eminent domain procedure allows condemnees to question the public nature of the taking and to raise other defenses in the form of a "traverse" or motion to dismiss the condemnor's petition. Ill.Rev.Stat., ch. 47, § 10; *Board of Education v. City of Chicago*, 402 Ill. 291, 298, 83 N.E.2d 714, 718–19 (1949). Since plaintiffs may raise the crux of their federal constitutional claims in the pending state proceedings, federal court intervention is unnecessary.[8] *Golden Dawn Shops, Inc. v. Department of HUD*, 333 F.Supp. 874 (E.D.Pa.1971); *Georgia v. City of Chattanooga, supra*, 264 U.S. at 483–84, 44 S.Ct. 369. It would be inappropriate for us or the district court below to assume that the Illinois courts would refuse to consider plaintiffs' federal constitutional claims once they were properly raised in those proceedings. *Golden Dawn Shops, Inc. v. Department of HUD*, 333 F.Supp. 874, 879 (E.D.Pa.1971).

Furthermore, we believe that the mere existence of a federal constitutional attack on an eminent domain proceeding of the state should not be grounds for a district court's decision not to abstain. Since there is a "possibility of a federal question in every taking by eminent domain under state authority," Nichols, Law of Eminent Domain, § 413(2) (1973), such a factor would nearly always preclude abstention in this type of case.[9]

Plaintiffs have the state courts of Illinois with its appellate system at their disposal for the adjudication of their federal constitutional claims. *See* Ill.Rev. Stat., ch. 47, § 12. If the Illinois Supreme Court should deny them "any rights secured to [them] by the Constitution and laws of the United States," the case may be brought to the Supreme Court of the United States for reexamination and review. *Georgia v. City of Chattanooga, supra*, 264 U.S. at 484, 44 S.Ct. at 371.[10]

**B.**

Other circumstances are present which dictate that the district court abstain from deciding the constitutional claims before it. The doctrine of abstention emanating from the Supreme Court's decision in *Railroad Commission v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), admonishes federal courts from considering federal constitutional claims against a state statute if the statute is susceptible to an interpretation which conforms with the Constitution. *Harman v. Forssenius, supra*. In such a case deference is given to the state courts to interpret the unsettled state law, for if they interpret it in such a way that is constitutional, the federal court's confrontation with the federal constitutional question is avoided. *Lake Carriers Association v. MacMullan*, 406 U.S. 498, 92 S.Ct. 1749, 32

---

**8.** We note also that the Illinois Constitution of 1970 protects these plaintiffs. Article I, section 15 requires all takings by eminent domain to be for a public purpose and guarantees all condemnees "just" compensation. The Illinois Eminent Domain Act provides the same. Ill. Rev.Stat., ch. 47, § 1.

**9.** Plaintiffs' readings and reliance on our decisions in *Progress Development Corp. v. Mitchell*, 286 F.2d 222 (7th Cir. 1961), and *Blankner v. City of Chicago*, 504 F.2d 1037 (7th Cir. 1974), are erroneous. In *Progress*, we did *not* "specifically" hold "that it was improper to dismiss a civil rights action wherein it was contended that the taking was for an unlawful purpose." Rather, noting that the federal action was brought *before* the institution of the state condemnation action, we stated that the *subsequent* state proceeding could not as a

matter of law serve to bar the prior-sought federal relief. In the present case, of course, the situation is the exact reverse. Plaintiffs' contorted reading of our decision in *Blankner* deserves little comment. *Blankner* merely held that the doctrines of res judicata and collateral estoppel barred the appellant from relitigating the same issues in federal court which she raised or *could have raised* in the state condemnation action.

**10.** *See also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 605, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975):

"[W]here a final decision of a state court has sustained the validity of a state statute challenged on federal constitutional grounds, an appeal to this court lies as a matter of right. 28 U.S.C. § 1257(1)."

L.Ed.2d 257 (1972). The Supreme Court has summarized the rationale behind the *Pullman* doctrine thusly:

"Regard for the interest and sovereignty of the state and the reluctance needlessly to adjudicate constitutional issues may require a federal District Court to abstain from adjudication if the parties may avail themselves of an appropriate procedure to obtain state interpretation of state laws requiring construction."

*Zwickler v. Koota,* 389 U.S. 241, 250, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967); see also *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 80–87, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975).

Plaintiffs argue that section 9.7 of the Illinois Eminent Domain Act does not permit the consideration of the proposed "commercial" use for the condemned property in computing the amount of compensation, and therefore violates the due process clause's requirement of "just compensation." Assuming, *arguendo,* that due process requires the consideration of the condemned property's proposed "commercial" use, we believe section 9.7 is clearly susceptible to such an interpretation by the Illinois courts. The question has not been reached by the Illinois Supreme Court. The state court in the condemnation proceedings may well interpret section 9.7 to allow the consideration of the Village's proposed "commercial" use of the condemned property in determining the amount of compensation.[11]

Since "the state court's interpretation of the [statute] may obviate any need to consider [its] validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily." *City of Meridian v. Southern Bell Tel. & Tel. Co.,* 358 U.S. 639, 641, 79 S.Ct. 455, 457, 3 L.Ed.2d 562 (1959). *See also Martin v. Creasy,* 360 U.S. 219, 224, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959).

### III.

It is clear from all of this that the district court properly stayed its hand and refrained from interfering with the eminent domain proceedings pending in the Illinois courts. Where a district court abstains in deference to pending state proceedings so as not to interfere with state sovereignty, the proper disposition of the matter is dismissal. *Crawford v. Courtney,* 451 F.2d 489, 492 (4th Cir. 1971); *Hamar Theatres, Inc. v. Cryan,* 393 F.Supp. 34, 39 (D.N.J.1975) (three-judge court); Wright, Law of Federal Courts 200 (2d ed. 1970). The order of the district court is therefore affirmed.[12]

Affirmed.

---

11. Plaintiffs maintain that section 9.7 is clear and unambiguous and susceptible to but one interpretation: the one they proffer. We disagree. It is true that the mere absence of a state court decision interpreting a state statute does not alone require abstention. But where the statute, as here, has not been construed and is susceptible to at least two interpretations, the absence of a state court decision interpreting it must be accorded great weight in deciding *whether to* abstain. P. Bator, D. Mishkin, D. Shapiro, & H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 991 (2d ed. 1973).

This case therefore is different from the decision in *Joiner v. City of Dallas,* 380 F.Supp. 754 (N.D.Tex.1974) (three-judge court), in which the court refused to abstain from interfering with pending state court eminent domain proceedings on either general comity or *Pullman* grounds. The court found the statute before it to be clear and unambiguous making *Pullman* inapplicable. The court further was of the opinion that no interference with the pending state court proceedings would result from its deciding the merits of the federal claims before it. We, however, believe that unwarranted interference with state sovereignty would result from the district court's deciding *the merits of this case and* believe the statute in question is *not* clear.

12. Because we find that the district court properly stayed its hand, we need not address plaintiffs' argument that they should have been granted leave to amend their complaint to allege the requisite $10,000.00 in controversy. *See* note 4 *supra.*